Fourth Division

August 7, 1997

No. 1-95-3007

THE PEOPLE OF THE STATE OF ILLINOIS, ) APPEAL FROM THE

) CIRCUIT COURT OF

Plaintiff-Appellee, ) COOK COUNTY.

)

v. )

)

JOSEPH MILLER, ) HONORABLE

) VINCENT BENTIVENGA,

Defendant-Appellant. ) JUDGE PRESIDING.

PRESIDING JUSTICE WOLFSON delivered the opinion of the 

court:

At some point in almost every criminal trial a prosecution witness will be asked to look around the courtroom and determine whether the perpetrator of the crime is present.  If and when the witness points to the defendant, an important part of the State's case falls into place.  The record reflects the identification. The prosecutor can argue the force of a courtroom identification.

In the case before us, the roles were reversed.  The defense asked that a defense witness be allowed the opportunity to identify the State's key witness.  The trial judge refused the request.  We find that refusal deprived the defendant of a fair opportunity to present his defense.  We reverse his conviction for aggravated battery and remand the cause for a new trial.

FACTS

Trial began with jury selection on June 27, 1995.  Evidence was heard on June 28 and 29, 1995.  The State produced three witnesses.

The complainant, Robert McGee, testified that he owned his own construction company.  On September 18, 1993, McGee said, he went to a bar called Frank's Place on Howard Street in Chicago, to meet with some friends.  At about 10:20 p.m., he left the bar alone.  As he walked down the street he was approached by a large black woman who asked him if he wanted a "date."  McGee said he declined the offer and walked away.  As he turned the corner to get to where his car was parked, however, he was attacked from behind.  A man, later identified as Miller, grabbed the neck of McGee's T-shirt, yanked him, and then pushed him to the ground.  McGee testified that he lay flat on the ground on his stomach while Miller held him down by pressing a knee into McGee's back.  While kneeling on his back, Miller searched McGee's pants pockets and took $60 in cash.  McGee said he had a small bruise on his back after the encounter.  The State showed pictures of McGee's back, depicting the bruise.

When Miller released him, said McGee, Miller casually walked away.  It was because of this casualness that McGee became incensed.  He decided to follow his attacker.

McGee said he saw Miller meet up with the woman who had propositioned him earlier that evening.  Miller and the woman had a "physical exchange," McGee said, though he could not see what, if anything, happened between them. 

When Miller and the woman came to Sheridan Road, they separated.  McGee, who had been darting behind bushes and cars to keep out of sight, saw a patrol car traveling along Sheridan Road.  He flagged it down.  He explained to the officer what had happened and then got into the squad car.  They patrolled the area until they saw Miller walking along Howard Street.

Officer Atkinson, the police officer in the squad car that McGee hailed, testified that she stopped the car after McGee saw Miller on the street and pointed him out as his attacker.  When she approached Miller, he said, "I am a Kung Fu master.  I'll snap you in two."  Miller was loud and threatening, so she pulled out her service revolver and called for assistance.  Two additional officers arrived on the scene.  Miller did not try to escape, but did not cooperate with the officers as they tried to arrest him and place him in the squad car.

After Miller was arrested, Officer Atkinson said, she patrolled the area in search of the woman.  Officer Atkinson said she was looking for a large, black woman in a purple top but did not see anyone who fit that description.

At trial, while Officer Atkinson was testifying, Miller became extremely agitated.  He called the officer a "liar" and a "bitch" and refused to calm down.  Miller asked to be taken out of the courtroom.  After a recess, Miller refused to come back into the courtroom for the conclusion of the trial.

Trial was moved to another courtroom that was equipped with an audio system that allowed Miller to hear the testimony while he remained in an adjoining cell.

Officer Minogue, one of the officers who responded to Officer Atkinson's call for assistance, was the last State witness.  It was stipulated that he would identify Miller as the man he arrested on September 18, 1993, on Howard Street.

Officer Minogue testified Miller appeared very angry when he was arrested.  He was making wild hand gestures, shouting, and talking in a threatening manner.  Miller did not resist arrest, but "stiffened" when they tried to handcuff him.  Miller did not have $60 in cash on his person when he was arrested.

The defense presented only one witness, Gail Page.  Page testified that she was an assistant manager for the catering service at Northwestern and had held that job for the last five years.  She also said that she had known Miller and his family for a number of years, although before September 18, 1993, she had not seen Miller for several years.

At about 10:20 p.m. on September 18, 1993, Page said, she was standing on the corner of Bosworth and Howard Streets, waiting for her cousin.  She was wearing blue jeans, a jeans jacket, and a white top.  A man approached her.  She described him as "five ten or eleven, dark complexion, male black.  I do not know the age.  Maybe thirty-eight to forty.  Thin."  He asked if she dated.  Page told the man she was married and was not interested.  The man, she said, seemed "frantic."  He persisted in following her as she tried to walk away.  He grabbed her arm.

Page said she noticed Miller on the street and called to him for assistance.  Miller came over and told the man to leave Page alone.  The two men fought and Miller knocked the other man to the ground.

Page said she left the area because her blouse had been torn and she was embarrassed.  She later learned that Miller had been arrested, but never called the police to explain what had happened.

On cross-examination, Page said that after the incident she saw the man who had approached her on September 18, 1993.  She saw him at a local store, Queen's Pantry.  This man followed her in a mustard colored car.  She also saw him in the courthouse on the day she testified.  She said he was wearing shorts and had been sitting outside courtroom Q.

Defense counsel then asked if the complainant, McGee, could be brought into the courtroom so that Page could identify him as the man who had approached her.  The trial court refused.  The court also denied defense counsel's request to have Page identify McGee from one of the pictures that the State had taken of him.

The State presented two witnesses in rebuttal.  Over defendant's objection, the court allowed the State to present the testimony of Detective Barron.  The detective testified that he did not ask to see McGee's license for identification when McGee came to the station to report the robbery.  The detective also said that McGee told him he lived at Pratt and was a salesman at Venture.

McGee was recalled to the stand to rebut Page's testimony.  He denied that he had tried to solicit a date from any woman on the evening of September 18, 1993.  He also denied owning a mustard colored car or following Page from Queen's Pantry.  He was not asked to identify Page in the courtroom.

After hearing argument and receiving instruction, the jury began deliberations on the afternoon of June 29, 1995.  At 8:40 p.m., the court noted on the record that the jury had sent out a note that a decision had been reached on one count, but it was deadlocked on the second count.  It wanted to know if it had to have a unanimous verdict on both counts.  The trial court sent back a response in the affirmative, over the State's objection.

The next entry in the record is dated June 30, 1995.  It appears the jury resumed deliberations on this day.  After about two hours, the jury returned verdicts on the two counts.  Miller was found guilty of aggravated battery, but acquitted of robbery.  Later, he was sentenced to six years imprisonment on the conviction.

DECISION

1. Identification of the Complainant

The controlling issue on appeal is the trial court's refusal to call McGee into the courtroom so that Gail Page could identify him as the man she said Miller hit in her defense.

The jury had trouble deciding this case.  It deliberated over parts of two days.  Finally, it reached an apparent compromise.  It rejected McGee's claim he had been robbed by the defendant, but accepted his account of the aggravated battery. McGee was believed in part, disbelieved in part.

Gail Page's credibility was critical to the success or failure of Miller's defense.  Her testimony, if believed, would support the defense claim that Miller was coming to the aid of Page, who, she said, was attempting to fend off McGee's unwanted advances.  McGee had admitted an encounter with a woman regarding a "date," but accused the unidentified woman of soliciting him.

The issue was joined.   

The jury had seen McGee and police witnesses point to the defendant.  The record was made to reflect those identifications.

Yet, when Page testified, she was not allowed the opportunity

to identify McGee. 

The jury did not know defense counsel had asked for the confrontation.  It did know Page had referred to a man who was "five ten or eleven, dark complexion, male black***maybe thirty-eight to forty.  Thin."  That description did not fit McGee, who described himself as a "big guy."  In fact, at a sidebar conference concerning the defense request, the State said:

"Judge, the problem I have is that the description

she has given does not fit [McGee].  He is not forty years old.  He is not five, ten.  He is six, three."

McGee was somewhere in the courthouse.  He was readily available, and, in fact, was called by the State as a rebuttal witness.  Page had said she "never" would forget the face of the man who grabbed her arm on September 18, 1993.

The jury was left to wonder about Page's credibility.  Her description of the man did not fit McGee.  Was she talking about someone else?  Was she concocting the entire story?  McGee was around, why didn't she point him out, the way State witnesses pointed out the defendant?

The trial court assumed, and the State now argues, that everyone knew Page was talking about McGee.  The issue is not whether the jury could reasonably conclude Page was talking about McGee.  The issue is whether Page's account of what happened was believable when compared to McGee's testimony.  It was the heart of Miller's affirmative defense.

That defense had been promised by defense counsel in opening statement.  Because of the trial court's ruling, he could not deliver.

We know that inaccuracies or discrepancies in a witness's description, although not fatal to identification, will reduce the witness's credibility and the reliability of the identification.  
People v. Simpson
, 172 Ill. 2d 117, 141, 665 N.E.2d 1228 (1996).  At the same time, an in-court identification will go a long way toward rehabilitating that witness's credibility.  
People v. Lewis
, 165 Ill. 2d 305, 357, 651 N.E.2d 72 (1995).  Also see 
People v. Slim
, 127 Ill. 2d 302, 308, 537 N.E.2d 317 (1989).

While 
Simpson
, 
Lewis
, and 
Slim
 are cases dealing with identification testimony of State witnesses, there is no reason  to believe the reasoning in them does not apply to defense  witnesses.  The overriding principle was stated by the United States Supreme Court:

"Few rights are more fundamental than that of an accused to present witnesses in his own defense."  
Chambers v. Mississippi
, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049, 35 L.Ed.2d 297, 312 (1973).

Interfering with a defendant's right to present witnesses and evidence interferes with the defendant's right to due process and a fundamentally fair trial.  
People v. Wheeler
, 151 Ill. 2d 298, 305, 602 N.E.2d 826 (1992).

We believe the trial court's failure to allow Page the opportunity to identify McGee in open court might well have had a destructive impact on Miller's defense.  It would have taken an extra few minutes to find McGee and bring him into court.  Because the case was close, and because the jury rejected

the most serious claim made by McGee, we conclude the trial court's error requires that Miller's conviction be reversed and a new trial ordered.

Because the evidence, if believed by a jury, is sufficient to support a guilty verdict, we will briefly discuss the other issues raised by the defendant.

2. Admission of the defendant's pre-arrest statement

   The trial court allowed the State's witness, Officer Atkinson, to testify to Miller's pre-arrest statement:  "I am a Kung Fu master.  I will snap you in two."

The State contends the statement was relevant to Miller's state of mind at the time of the attack on McGee.  We note that the statement was made only to the police officer who had stopped Miller on the street.  McGee was sitting inside the police car.

While the statement may have had some marginal relevance, it  posed a risk of misuse by the jury.  That is, the jury might have taken the statement to reflect the defendant's propensity toward violence or belligerence, an impermissible use of the evidence. See 
People v. Wydra
, 265 Ill. App. 3d 597, 615-16, 637 N.E.2d 74 (1994).

We are not prepared to hold admission of the statement was an abuse of the trial court's discretion to admit or exclude evidence.  
People v. Sims
, 265 Ill. App. 3d 352, 359, 638 N.E.2d 223 (1994).  Should this case be retried, however, we suggest the trial court carefully weigh the probative value of the statement against any unfair prejudice it might cause.

3. Entitlement to a fitness hearing

The defendant contends he was improperly denied a fitness

hearing.  He points to the fact that his defense lawyer moved to withdraw one week before trial began, citing an inability to communicate with the defendant.  Defendant's unwillingness to cooperate with his lawyer does not, however, equate to a lack of fitness, which is the inability to understand the nature and purpose of the criminal proceedings or assist in his own defense. See 
People v. Britz
, 174 Ill. 2d 163, 673 N.E.2d 300 (1996).

The record shows that Miller was evaluated on at least four occasions, the last being in March 1995--only three months before trial.  Defendant always was found fit for trial.  While his words and conduct reflect an excessive amount of belligerence and hostility, the defendant also demonstrated his awareness of the nature of the case and his involvement in his defense.

Nor was defendant entitled to a fitness hearing in accord with section 104-21(a) of the Code of Criminal Procedure.  725 ILCS 5/104-21(a) (West 1994).  Although defendant now has produced some evidence that indicates psychotropic drugs were administered to him in November 1993 through January 1994, that evidence never was presented to the trial court.  Even if it had been, the defendant did not meet his burden of proving he was taking psychotropic medication at or near the time of trial (June 27, 1995) or sentencing.  No fitness hearing was required.  See 
People v. Burgess
, 176 Ill. 2d 289, 680 N.E.2d 357 (1997).

4. Dismissal of jurors without admonishment

Defendant claims his right to a fair trial was violated when the trial court failed to admonish jurors about discussing the case when they were allowed to go home after their first night of deliberations.  We note the record is silent on what, if anything, the trial judge told the jurors when they were allowed

to separate.  We make no further comment on this purported error because it is unlikely to come up again in any retrial that might take place.  Whether there will be a retrial is problematic, since Miller was in custody from the time of his arrest in September 1993.  He was sentenced to six years imprisonment in August 1995.  He was given credit for time served before his sentencing.                  

                          CONCLUSION

Because the trial court's refusal to allow Gail Page to identify Robert McGee in the jury's presence deprived the defendant of a fair trial, we reverse his conviction and remand  the case for a new trial.   

REVERSED AND REMANDED.

McNAMARA and CERDA, JJ., concur.