THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD T. HILL, Defendant-Appellant.

Second District   No. 2—98—0361

Opinion filed October 15, 1999.—Rehearing denied December 27, 1999.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Robert S. Hirschhorn, of Skokie, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Mary Beth Bruns, Assistant Attorney General, and Martin P. Moltz and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HUTCHINSON delivered the opinion of the court:

Pursuant to a plea agreement, defendant, Donald Troy Hill, a/k/a Troy Donald Hill, pleaded guilty to two counts of aggravated criminal sexual assault (720 ILCS 5/12—14(b)(1) (West 1994)) and was sentenced to two consecutive nine-year terms of incarceration. Defendant subsequently filed a petition for relief from the judgment pursuant to section 2—1401 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2—1401 (West 1998)). Defendant's *pro se* petition alleged that (1) the trial court erred because it did not *sua sponte* order a hearing on his fitness to stand trial and (2) he was denied the effective assistance of counsel because his attorney failed to request a fitness hearing. On its own motion and without holding an evidentiary hearing, the trial court dismissed the petition as frivolous and without merit. Defendant timely appeals, contending that the trial court erred when it dismissed his petition because (1) it improperly applied the standards of the Post-Conviction Hearing Act (Post-Conviction Act) (725 ILCS 5/122—1 *et seq.* (West 1998)) to his section 2—1401 petition (we address this contention in a nonpublished portion of this opinion); (2) his use of psychotropic medications at or near the time of his guilty plea entitled him to a fitness hearing; (3) a *bona fide* doubt existed as to his fitness, mandating a fitness hearing; (4) he was denied the effective assistance of counsel because his attorney failed to move for a fitness hearing; and (5) he was coerced into entering a guilty plea because his attorney instructed him that he must plead guilty despite his

express desire for a trial (we address this contention in a nonpublished portion of this opinion). We affirm.

## BACKGROUND

### 1. Defendant's Guilty Plea

On March 8, 1995, defendant was charged by indictment with three counts of aggravated criminal sexual assault in violation of section 12—14(b)(1) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/12—14(b)(1) (West 1994)) and one count of aggravated criminal sexual abuse in violation of section 12—16(c)(1)(i) of the Criminal Code (720 ILCS 5/12—16(c)(1)(i) (West 1994)).

The matter was continued several times while defense counsel sought defendant's medical and psychiatric records. On July 10, 1995, defense counsel requested an order requiring the county jail to provide defendant with the brand name medication prescribed for him because defendant had reacted poorly to generic substitutes. After determining that the medication was psychotropic, the trial court engaged defense counsel in the following colloquy:

"THE COURT: There's been some recent case law that's dealt with this issue of psychotropic medication. ***

Assuming he'll be going back to some psychotropic medication, then there may be a question regarding his fitness to stand trial.

I am just wondering if we should appoint Dr. Ali or some other doctor at this point to make an examination.

MS. LACRONE [defense counsel]: Judge we are aware that may be an issue. That is the reason for which we are requesting all the medical [records] from the various medical agencies where [defendant] has been treated.

After reviewing the records, we may come in before the Court to ask to evaluate [defendant].

But we are waiting to receive all the records, so we can ask, if we can ask the Court to do that.

\* \* \*

THE COURT: All right. *** I just wanted to bring that to your attention.

If he does go back on the medication, then we may definitely be in a position where we have to proceed with some sort of examination, to clear up any issues regarding fitness to stand trial."

On August 15, 1995, the trial court appointed Dr. Syed Ali to evaluate defendant's fitness, and on October 23, 1995, Dr. Ali filed his report. In his report, Dr. Ali stated that he reviewed defendant's medical records, other case reports, and interviewed defendant. The interview lasted approximately 1½ hours and included, *inter alia*, defendant's social and family history, a mental status evaluation and a

"competency assessment questionnaire." The questionnaire elicited defendant's responses to a series of questions regarding the nature of the charges and trial procedures. Dr. Ali concluded:

> "It is the conclusion of this Psychiatric Evaluation that [defendant] is presently clinically Fit to Stand Trial. It is being further concluded that [defendant] at the present time is not on any antidepressant [sic] or psychotropic medication. As of two weeks ago he did take an antidepressant medication called Imipramine. Were he to resume taking Imipramine my conclusion would still remain the same ***."

Defense counsel requested one week to review the report. When defendant next appeared before the trial court, defense counsel indicated that he anticipated filing a motion to suppress defendant's statements to the police and did not anticipate filing any other motions. Defense counsel filed a motion to suppress but on December 1, 1995, the date set for hearing, informed the court that the parties had reached a plea agreement.

Defendant pleaded guilty to two counts of aggravated criminal sexual assault, and the State nol-prossed the remaining counts. The parties agreed that defendant would receive a nine-year sentence on each count, and, because the crimes arose from a single course of conduct but involved two victims, the sentences would be served consecutively. The trial court asked defendant whether he was now taking any drugs or medications, and defendant responded that he was not. In a series of questions, the trial court then asked defendant whether he understood the terms of the plea agreement. Defendant indicated that he understood everything except the consequences of consecutive sentences. The trial court passed the matter to allow defense counsel to explain the terms of the plea bargain to defendant. When the trial court recalled defendant's case, defendant requested clarification of the application of time served, asking, "The full-time, I didn't know if it went on the first nine or the back?" The trial court explained the application of credit for time served to consecutive sentences and continued to question defendant regarding his guilty plea.

After accepting defendant's plea, the trial court inquired further into the issue of defendant's fitness to stand trial as follows:

> "THE COURT: I know we had an earlier forensic psychiatric evaluation. You have seen no indication or anything to lead you to believe that [defendant] does not understand or does not comprehend what is occurring today?
>
> MR. KLEEMAN [defense counsel]: That's correct. *** Dr. Ali found him fit to stand trial, as the court can see from the report. The defendant at one time was on medication through the jail, but that was brought to the Court's attention.

I have discussed previously those issues with [defendant], as well as the possibility of a psychiatric defense, and he is currently, Judge, not on any medication and has not been on any medication for I believe three weeks. I just wanted to make those matters of record.

THE COURT: Is that correct, [defendant]?

DEFENDANT: Yes.

THE COURT: You discussed all of these things with your attorney. You want to proceed, I take it. The bottom line is, after discussing everything, you want to proceed with this agreement?

DEFENDANT: Yes."

The trial court found that defendant had been advised of his rights to a trial, that his plea was made voluntarily, and that there was a factual basis for the plea. Based on the agreement, the trial court sentenced defendant to two consecutive nine-year terms of incarceration.

## 2. Defendant's *Pro Se* Petition

On December 18, 1997, defendant filed a *pro se* petition for relief pursuant to section 2—1401 of the Civil Code. The petition alleged that defendant was denied the effective assistance of counsel because his attorney failed to request a fitness hearing and because his attorney told him he had to understand and had to plead guilty despite his repeated requests for a jury trial. The petition further alleged that defendant had been denied the due process of law because, although his use of psychotropic medication entitled him to a fitness hearing, the trial court did not hold a fitness hearing.

Defendant attached approximately 150 pages of exhibits to his petition. The exhibits included copies of defendant's medical records from the Illinois State Psychiatric Institute between December 8, 1994, and February 13, 1995. Defendant later filed an amendment to his petition consisting of medical records from the Illinois Department of Corrections, beginning on December 7, 1995. Defendant, however, did not attach medical or psychiatric records for the period during which he was held in the county jail pending trial.

The exhibits attached to defendant's section 2—1401 petition also included numerous handwritten pages of defendant's "life history" and what appears to be a diary. In his life history, defendant described a period of depression that began shortly after his wife's death. Defendant described several suicide attempts. Defendant stated that his dead wife would appear to him, and he believed that her spirit had thwarted his suicide attempts. Defendant also described meeting the young female victims and joining a "sex club." Defendant described in detail acts of sexual contact and penetration with the victims but asserted that the victims seduced him and wanted him to teach them

about sex. Defendant sometimes referred to himself in the third person as "Don," recounted arguing with Don about Don's actions with the victims, and suggested that he was being punished for Don's crimes.

In the diary, apparently kept while defendant was in jail awaiting trial, defendant described hallucinations in which he saw his deceased wife's spirit and heard her voice. Defendant also described taking various medications and complained of the side effects. The last entry in the diary is dated "May 9-10" and was apparently made in 1995.

On February 20, 1998, the trial court heard defendant's petition. The trial court dismissed defendant's petition without an evidentiary hearing and based its decision on the fitness evaluation and defendant's statements that he was not taking psychotropic medications. Defendant informed the trial court that he believed his daughter had contacted an attorney on his behalf. The trial court noted that the petition had been filed *pro se* and no attorney had filed an appearance in the case. However, the trial court stayed the application of its order until March 20, 1998, to allow defendant to retain counsel. Defendant then asked whether the trial court could appoint counsel. The trial court stated that it could only appoint counsel if the petition was meritorious, denied defendant's request, and found that the petition was frivolous and without merit.

On March 20, 1998, after determining defendant had not retained counsel, the trial court again addressed defendant's use of psychotropic medications as follows:

> "THE COURT: I reviewed the transcript of the plea, and that transcript indicates that I specifically asked you about psychotropic medications. And you indicated that you were not on psychotropic medication when you entered the plea, and you had not been, as I recall, for a three-week period of time. I think that's in the transcript.
>
> DEFENDANT: Yeah, I think so 'cause I took myself off the medication."

The trial court then confirmed its order dismissing defendant's petition and defendant timely appealed.

## MERITS OF DEFENDANT'S CONSTITUTIONAL CLAIM

■ The Post-Conviction Act creates a three-step process for adjudicating claims of constitutional deprivation following a criminal conviction. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). In the first stage, the trial court examines the petition and determines whether the petition "is frivolous or patently without merit." *Gaultney*, 174 Ill. 2d at 418; 725 ILCS 5/122—2.1(a)(2) (West 1998). To survive summary dismissal, a petition need only make out the gist of a meritorious constitutional claim. *Gaultney*, 174 Ill. 2d at 418; *People v. Porter*, 122

Ill. 2d 64, 74 (1988). Our review of a trial court's decision to dismiss a petition without an evidentiary hearing is *de novo*. See *People v. Coleman*, 183 Ill. 2d 366, 387-89 (1998) (holding that the question is essentially a legal one subject to plenary review).

Defendant first contends that his petition established a constitutional violation because he was entitled to a fitness hearing. Defendant argues that a *bona fide* doubt regarding his fitness was created because he had attempted suicide, had been recently hospitalized, and was taking psychotropic medications.

Before addressing the merits of defendant's constitutional claim, we must first determine the effect, if any, of subsequent legislative amendments to section 104—21 and whether the record supports defendant's claim that he was receiving psychotropic medications at the time of his plea.

### 1. Effect of Amendments to Section 104—21

■ Defendant's claim is based on a violation of section 104—21 of the Code of Criminal Procedure of 1963 (725 ILCS 5/104—21 (West 1994)). This statutory provision has been twice amended since defendant pleaded guilty; however, the first amendment was declared unconstitutional, and the second amendment was not retroactively applied. *People v. Kinkead*, 182 Ill. 2d 316, 334-35 (1998) (hereinafter *Kinkead II*). Therefore, we will base our analysis on the version of section 104—21 in effect at the time of defendant's plea, which read:

> "A defendant who is receiving psychotropic drugs or other medications under medical direction is entitled to a hearing on the issue of his fitness while under medication." 725 ILCS 5/104—21(a) (West 1994).

### 2. Sufficiency of Defendant's Factual Allegations

■ In a postconviction proceeding, a defendant must set forth the specific manner in which his rights have been violated and must plead sufficient facts to support his claim of a constitutional violation (*People v. Lemons*, 242 Ill. App. 3d 941, 946 (1993), citing *Porter*, 122 Ill. 2d at 74). When reviewing a decision made at the first stage of a postconviction proceeding, we must assume the allegations in the petition are true and construe them liberally. *Coleman*, 183 Ill. 2d at 382. However, this liberal reading of a postconviction petition does not relieve a defendant of pleading specific facts supporting her or his claim. See *Lemons*, 242 Ill. App. 3d at 946.

■ In this case, it is undisputed that defendant had received psychotropic medication sometime prior to entering his guilty plea. However, defendant has provided no support for his contention that he was receiving psychotropic medications *at* the time he pleaded

guilty. Dr. Ali's fitness report, filed October 23, 1995, indicates that defendant was not receiving psychotropic medication and had not been receiving any for at least two weeks. On December 1, 1995, before accepting defendant's guilty plea, the trial court asked defendant if he was taking any medication, and defendant replied that he was not. When the trial court later asked defendant's attorney to address the issue of psychotropic medication, he responded that defendant had not taken any medication for at least three weeks, and defendant agreed. Moreover, the trial court addressed this allegation before dismissing defendant's postconviction petition, and defendant again stated that he had stopped taking psychotropic medication before his guilty plea.

Defendant attached medical records in support of his claim. However, he has not attached any medical records from the period during which he was held at the Du Page County jail. The records he provided from the Illinois Department of Corrections include a notation that defendant had a history of using medication for depression but also indicate that defendant was not receiving any medications on December 8, 1995, when he was transferred from the county jail. Similarly, although defendant's diary contains references to receiving medications, it does not contain entries from the time surrounding defendant's guilty plea and does not provide a detailed account of the types and quantities of the medications defendant received.

Defendant cites *People v. Kinkead*, 168 Ill. 2d 394 (1995) (hereinafter *Kinkead I*) and argues that we should remand this cause for the limited purpose of determining which medications defendant received for the period surrounding his guilty plea. We disagree. In this case, unlike *Kinkead I*, the record is clear, the fitness report, defense counsel's representations, and defendant's own statements all support a finding that defendant stopped taking psychotropic medications a minimum of three weeks before entering his plea. Defendant's unsupported allegations to the contrary are insufficient to rebut the clear statements contained in the record. See *Lemons*, 242 Ill. App. 3d at 946. Consequently, for the purpose of reviewing the constitutional claims in defendant's petition, we find that defendant's use of psychotropic medication ended at least three weeks prior to his guilty plea.

### 3. Defendant's Use of Psychotropic Medication Near the Time of His Plea

Generally, a defendant is presumed to be fit to stand trial and will be considered unfit only if, because of a mental or physical condition, he is unable to understand the nature and purpose of the proceedings or assist in his defense. 725 ILCS 5/104—10 (West 1998); *People v. Haynes*, 174 Ill. 2d 204, 226 (1996). The fitness requirement is

rooted in the fundamental constitutional guarantees of due process, and once the trial court has been presented with facts that raise a *bona fide* doubt regarding a defendant's fitness, it must hold a fitness hearing. *People v. Brandon*, 162 Ill. 2d 450, 456 (1994). Under the version of section 104—21 in effect when defendant pleaded guilty, the legislature recognized that the use of psychotropic medication is an important signal that a defendant is not fit and equated that use with a *bona fide* doubt as to fitness to stand trial. *People v. Gevas*, 166 Ill. 2d 461, 469 (1995); *Brandon*, 162 Ill. 2d at 457.

■ Once a *bona fide* doubt arises regarding a defendant's fitness, the trial court has a duty to hold a fitness hearing. *Brandon*, 162 Ill. 2d at 456. The trial court may not dispense with a hearing based on its own observation of the defendant's appearance and demeanor. *Brandon*, 162 Ill. 2d at 460. Furthermore, the introduction of a psychiatric report finding a defendant fit to stand trial is not equivalent to a fitness hearing. See *Gevas*, 166 Ill. 2d at 469-70, citing *Brandon*, 162 Ill. 2d at 453-55. Similarly, a reviewing court may not examine the record and make its own determination regarding the effect of medication on a defendant's fitness. *People v. Birdsall*, 172 Ill. 2d 464, 478 (1996).

■ The supreme court has routinely held that the failure to hold a fitness hearing requires reversing defendant's conviction and that a retrospective fitness hearing cannot be used to correct the error. See *People v. Nitz*, 173 Ill. 2d 151, 164 (1996); *Birdsall*, 172 Ill. 2d at 479-80; *Gevas*, 166 Ill. 2d at 471; *Brandon*, 162 Ill. 2d at 461. This general rule is premised on the difficulty in determining, long after the conclusion of the underlying proceedings, the degree of mental functioning enjoyed by a defendant at the time of trial. *People v. Burgess*, 176 Ill. 2d 289, 303 (1997). Under appropriate circumstances, however, this rule is relaxed and an inquiry into the effect of the psychotropic medications received by a defendant is proper. *Burgess*, 176 Ill. 2d at 303-04 (considering expert testimony presented at supplemental hearing that indicated the medications used by the defendant did not affect his fitness to stand trial); see also *People v. Cortes*, 181 Ill. 2d 249, 277 (1998) (applying *Burgess* to the trial court's fitness hearing conducted one year after the defendant's conviction but based on contemporaneous fitness reports).

■ The analysis presented in *Brandon* and *Gevas* is incomplete, however, because it fails to address an additional consideration. A court must also consider the nature and timing of a defendant's use of psychotropic medications. See *Kinkead I*, 168 Ill. 2d at 411. A defendant is entitled to a fitness hearing only if he is taking psychotropic medications at a relevant time. *Kinkead I*, 168 Ill. 2d at 411. For

example, in *People v. Miller*, 291 Ill. App. 3d 320 (1997), evidence that the defendant had taken psychotropic medications 18 months prior to trial did not entitle him to a fitness hearing in light of an evaluation conducted 3 months prior to trial, which concluded he was fit to stand trial. *Miller*, 291 Ill. App. 3d at 327. Similarly, in *People v. Hanna*, 296 Ill. App. 3d 116 (1998), isolated references to psychotropic medications in the defendant's medical records did not require a remand when the defendant presented no evidence that he had continued taking any of the medications during the three months preceding trial. *Hanna*, 296 Ill. App. 3d at 123-24. However, in *Gevas* the supreme court reversed the defendant's conviction when he had taken psychotropic medications one month prior to his guilty plea but the record did not indicate whether the defendant continued to take the medications. *Gevas*, 166 Ill. 2d at 469. The critical stages of a criminal proceeding, when a defendant is entitled to a fitness hearing, are at the time of trial or sentencing. See *People v. Straub*, 292 Ill. App. 3d 193, 199 (1997).

The circumstances in *Straub* illustrate the need to consider the nature and timing of a defendant's use of psychotropic medication. In *Straub*, the defendant contended on appeal that he had been entitled to a fitness hearing during trial because he had received Valium, a psychotropic medication. However, the defendant had never informed the trial court that he was taking Valium, and two evaluations of the defendant did not find him unfit. Moreover, the defendant's attorney was aware of his obligation to raise defendant's fitness if defendant had difficulty understanding the proceedings or participating in his defense, but the attorney reported no difficulty in these areas. The appellate court noted that "the trial court took great pains to assure that defendant's medication was not affecting his ability to understand the proceedings and cooperate in his defense" and "could rely on defense counsel's representation that there had been no problem." *Straub*, 292 Ill. App. 3d at 200. Ultimately, the *Straub* court concluded that, although the defendant may have had a prescription for Valium, if he was not taking it, no *bona fide* doubt of fitness was raised. *Straub*, 292 Ill. App. 3d at 200.

Other recent cases suggest that a reviewing court should not focus solely on whether a defendant has a history of receiving psychotropic medication but should also examine the trial court's response to that history. See *People v. McKay*, 282 Ill. App. 3d 108, 114 (1996). In *McKay*, the defendant's history of schizophrenia and psychotropic drug use was revealed in a presentence report and through testimony at defendant's sentencing hearing. This court remanded the cause with directions to vacate the defendant's convictions if he had been receiving psychotropic medication, because, although the trial court

was—or should have been—on notice that a fitness hearing might be required, it failed to investigate his fitness further. See *McKay*, 282 Ill. App. 3d at 114. Similarly, in *People v. Abraham*, 293 Ill. App. 3d 801 (1997), the defendant's guilty plea and conviction were vacated because he had taken psychotropic medication at the time of his plea. *Abraham*, 293 Ill. App. 3d at 804. This court found that, although the trial court held a *Burgess*-type supplemental hearing, the hearing did not sufficiently protect the defendant's right not to be tried while unfit because the State failed to present medical evidence of the effects of the medication on the defendant. See *Abraham*, 293 Ill. App. 3d at 805.

After examining *Brandon* and its progeny that discuss the unamended version of section 104—21, we conclude that any determination of the right to a fitness hearing based on the use of psychotropic medication will turn largely on the unique facts presented in each case. However, the following rules emerge governing a defendant's right to a fitness hearing and the special consideration that must be accorded the nature and timing of her or his use of psychotropic medication.

■ The ultimate question remains whether the trial court observed procedures adequate to protect a defendant's right not to be tried while unfit. *Cortes*, 181 Ill. 2d at 274, citing *Brandon*, 162 Ill. 2d at 456. A defendant's use of psychotropic medication is an important signal that fitness may be an issue, which should prompt the trial court to act to protect the defendant's right not to be tried when unfit. *Gevas*, 166 Ill. 2d at 469. If that use continues during a critical phase, *i.e.*, trial or sentencing, the weight accorded that signal increases, the defendant's use of psychotropic medication becomes the equivalent of a *bona fide* doubt regarding fitness, and the trial court must *sua sponte* conduct a fitness hearing (*Kinkead I*, 168 Ill. 2d at 411; *Brandon*, 162 Ill. 2d at 456). However, if a defendant has a history of receiving psychotropic medication but that use stops before a critical phase, the defendant's receipt of psychotropic medication remains an important signal that fitness is an issue but is not the equivalent of a *bona fide* doubt. See *Hanna*, 296 Ill. App. 3d at 123-24. No fitness hearing is required if the defendant's use was sufficiently remote (see *Hanna*, 296 Ill. App. 3d at 123-24; *Miller*, 291 Ill. App. 3d at 327) or if the trial court observes procedures sufficient to ensure that the defendant's ability to cooperate in his or her defense has not been impaired by his or her earlier use of psychotropic medication (see *Straub*, 292 Ill. App. 3d at 200).

■ Generally, the violation of a defendant's right not to be tried while unfit requires the reversal of the defendant's conviction. See,

*e.g., Nitz*, 173 Ill. 2d at 164. However, a remand for a limited hearing remains appropriate when it is impossible to determine from the record whether the defendant's use of psychotropic medication continued during a critical stage. See *McKay*, 282 Ill. App. 3d at 114. Similarly, a remand for a supplemental hearing is appropriate if expert testimony could establish that the defendant's use of psychotropic drugs could not have affected his or her fitness to stand trial. See *Burgess*, 176 Ill. 2d at 303-04; *Cortes*, 181 Ill. 2d at 277.

■ In this case, defendant was not taking psychotropic medication at a critical stage when he pleaded guilty. As we observed above, defendant stopped taking psychotropic medication at least three weeks prior to his plea. This finding is supported by Dr. Ali's report, defense counsel's representations, and defendant's own statements at the time of his plea and in connection with his postconviction petition. Defendant presented no evidence to support his allegations to the contrary. See *Lemons*, 242 Ill. App. 3d at 946.

Defendant argues that his statement that he was not then taking medications is imprecise, and he suggests that his guilty plea is being used to launder the issue of his fitness. We disagree and find nothing imprecise in either the trial court's question or defendant's answer. Admittedly, it is anomalous to suggest that a defendant who is unfit to stand trial can knowingly waive the issue of his own fitness. *Brandon*, 162 Ill. 2d at 457, citing *Pate v. Robinson*, 383 U.S. 375, 384, 15 L. Ed. 2d 815, 821, 86 S. Ct. 836, 841 (1966). However, it does not follow that a defendant is similarly unable to accurately report his own use of medication merely because his response may determine whether he is entitled to a fitness hearing. See *Straub*, 292 Ill. App. 3d at 200 (considering the defendant's failure to indicate that he was taking psychotropic medication). Therefore, we hold that, because defendant was not using psychotropic medication at the time of his plea, the caution signal raised by his history of receiving psychotropic medication was not the equivalent of a *bona fide* doubt mandating a fitness hearing.

■ We now move to the second phase of our inquiry. Defendant received psychotropic medication approximately three weeks before entering his plea. We cannot conclude as a matter of law that this use was so remote that no *bona fide* doubt could arise regarding his fitness. Compare *Gevas*, 166 Ill. 2d at 469 (holding use one month before trial mandated hearing when record was unclear regarding whether use continued) with *Hanna*, 296 Ill. App. 3d at 123-24 (holding use three months before trial did not require hearing). The issue before us, therefore, is whether the procedures employed by the trial court were sufficient to ensure that defendant's recent use of psychotropic medication did not interfere with his right not to be tried while unfit. See *Straub*, 292 Ill. App. 3d at 200.

Here, despite defendant's "Keystone Kops" characterization of the proceedings, we find that the trial court observed procedures sufficient to protect defendant's rights. It is clear from the record that both the trial court and defense counsel were aware of defendant's medical history and concerned that he might not be fit to stand trial. When first notified that defendant was receiving prescription medication in the county jail, the trial court observed that if defendant was receiving psychotropic medication he might be entitled to a fitness hearing. Defense counsel agreed but indicated that more information was required to determine whether a hearing was required. The trial court thereafter continued the matter repeatedly to allow defense counsel to gather and review defendant's medical records. Eventually the trial court ordered a fitness evaluation at defendant's request.

The fitness evaluation concluded that defendant was fit to stand trial, and the report of the evaluator was available to both the trial court and defense counsel. The report revealed that defendant responded appropriately to a series of questions regarding the nature of the charges against him, possible defenses, and the respective roles of judges, jurors, and attorneys. When defendant entered his plea, the trial court specifically questioned him regarding his use of medication and was informed by defendant that he had stopped receiving medication. The trial court also questioned defense counsel regarding defendant's ability to cooperate in his defense and was told that no problem had been observed.

We hold that, despite defendant's recent history of using psychotropic medication, the trial court could consider defendant's statement that he was no longer taking medication, the report of the fitness evaluator, defense counsel's representations, and its own observations of the defendant to determine whether a *bona fide* doubt regarding his fitness existed that would require a full fitness hearing. See *Straub*, 292 Ill. App. 3d at 200. Consequently, we determine that the trial court correctly recognized and responded to the warning signal arising from defendant's medical history and did not err when it failed to order a fitness hearing *sua sponte.*

### 4. *Bona Fide* Doubt Regarding Defendant's Fitness

▪ Defendant also contends that a *bona fide* doubt existed regarding his fitness that arose independently from his use of psychotropic medication. Defendant argues that he, "almost by definition, was unfit for trial because he was suicidal, hearing voices, and dissociated from himself." We disagree. By definition, "[a] defendant is unfit to stand trial or to enter a plea if, based on a mental or physical condition, he is unable to understand the nature and purpose of the proceedings

against him or to assist in his defense." *People v. Burton*, 184 Ill. 2d 1, 13 (1998); see also 725 ILCS 5/104—10 (West 1998). Fitness speaks only to a defendant's ability to function within the context of a trial and does not refer to sanity or competence in other areas. *People v. Coleman*, 168 Ill. 2d 509, 524 (1995). A person can be fit to stand trial although his mind may be otherwise unsound. *Coleman*, 168 Ill. 2d at 524.

 ▉ We have, as defendant urged, reviewed the materials attached to his petition. Defendant described suicide attempts, visions of his dead wife, and incidents in which he refers to himself in the third person. His medical records confirm that he reported a history of depression, suicidal ideation, and visual and auditory hallucinations. However, a history of suicide attempts does not, by itself, demonstrate that a defendant is unfit. *People v. Sanchez*, 169 Ill. 2d 472, 483 (1996). Moreover, as in *Sanchez*, the additional evidence defendant presents may provide details of defendant's mental health history that were unknown to the trial court, but these details do not demonstrate that defendant lacked the capacity to understand the proceedings or participate in his defense. See *Sanchez*, 169 Ill. 2d at 484-85.

More importantly, regardless of what defendant's postconviction petition reveals regarding his competency in other areas, the record contains nothing suggesting that defendant was unfit to enter a plea. Shortly before entering his guilty plea, defendant was given a fitness evaluation in which he appropriately responded to questions regarding the nature of the charges against him, possible penalties, and the role of the various individuals involved in a criminal trial. When questioned by the trial court during his guilty plea hearing, defendant repeatedly responded that he understood the consequences of his actions and asked a cogent question about the application of credit for time served. This question, by itself, suggests defendant was fit to plead and, at a minimum, establishes that defendant understood he would be serving two consecutive nine-year sentences and was entitled to credit for the time he had already served. Defense counsel further informed the trial court that he had been able to communicate with his client and believed defendant was fit to plead guilty. Therefore, although the materials presented by defendant raise questions regarding his overall mental health, the results of the fitness evaluation, defendant's conduct before the trial court, and the observations of defense counsel combined preclude any *bona fide* doubt regarding the much narrower issue of defendant's fitness to stand trial. Consequently, the trial court did not err when it refused to order a fitness hearing *sua sponte*.

### 5. Ineffective Assistance of Counsel

 ▉ Defendant also contends that he was denied the effective as-

sistance of counsel. Illinois follows the two-part *Strickland* test for ineffective-assistance-of-counsel claims. *People v. Albanese*, 104 Ill. 2d 504, 526 (1984), adopting the rule in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). In order to establish ineffective assistance of counsel, a defendant must show that (1) his attorney's performance was ineffective and (2) he was prejudiced as a result. *Albanese*, 104 Ill. 2d at 525-26. A reviewing court should avoid the temptation to use the clarity of hindsight to second-guess defense counsel's trial strategy. See *People v. McPhee*, 256 Ill. App. 3d 102, 106 (1993).

■ Defendant argues that his attorney erred by not requesting a fitness hearing. In *Brandon*, the supreme court held that defense counsel's failure to request a fitness hearing when a defendant is receiving psychotropic medications is an error that cannot be dismissed as a matter of judgment or trial strategy. *Brandon*, 162 Ill. 2d at 458. However, when there is no automatic entitlement to a fitness hearing, the failure to request a hearing is not *per se* ineffective, and an attorney is not required to take futile actions on a defendant's behalf. *People v. Wiggins*, 298 Ill. App. 3d 766, 774 (1998). As we concluded above, defendant was not entitled to a fitness hearing because his use of psychotropic medication was prior to a crucial stage in the proceedings and the trial court responded to defendant's history of receiving psychotropic medication by adopting procedures adequate to protect defendant's rights. Further, we find no error in defense counsel's failure to request a hearing because, although defendant's medical records raised a concern regarding fitness, defendant's fitness evaluation concluded he was not taking psychotropic medication and was fit to stand trial. We determine that, when presented with this evaluation, a defense attorney could reasonably conclude that a fitness hearing would be futile. Consequently, we conclude that defense counsel's decision not to request a fitness hearing was a matter of trial strategy that will not support a claim of ineffective assistance. See *Wiggins*, 298 Ill. App. 3d at 774.

## CONCLUSION

We find that defendant had received psychotropic medication until approximately three weeks before entering his plea. However, we hold that, because defendant was not receiving psychotropic medication at a critical phase, *i.e.*, during trial or sentencing, and the trial court acted to ensure that the earlier use had not interfered with defendant's ability to cooperate in his defense, defendant was not entitled to a fitness hearing under section 104—21. Similarly, we hold that, while defendant had a history of treatment for depression and hallucinations,

this history was insufficient to create a *bona fide* doubt regarding the much narrower issue of his fitness to stand trial or plead. Therefore, we affirm the trial court's order dismissing defendant's petition without an evidentiary hearing.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN, P.J., and RAPP, J., concur.