THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LINCOLN JOHNS, Defendant-Appellant.

First District (4th Division)   No. 1—95—0492

Opinion filed December 12, 1996.

Michael J. Pelletier and Patricia Mysza, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Clare Wesolik Connolly, and Kent Delgado, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a jury trial, defendant, Lincoln Johns, was convicted of first degree murder and aggravated battery with a firearm. The trial court sentenced defendant to consecutive terms of 50 years' and 10 years' imprisonment. On appeal, defendant seeks a limited remand to determine whether he was receiving psychotropic medication at any critical stages of the criminal proceedings where the presentence investigative report states that he was prescribed both Thorazine and Haldol while incarcerated awaiting trial. Defendant also contends that the trial court abused its discretion in imposing sentence and that the judgment order should be corrected to reflect that defendant was convicted of one count of first degree murder rather than two. The relevant facts are as follows.

At trial, the State established that defendant, while riding in a car with four other men on July 29, 1992, shot into a crowd of people near the intersection of 75th and Phillips in Chicago. Three-year-old Dominique Wright was killed, and Dominique's mother, Deidre Wright, was injured. William Condon, an occurrence witness, identified defendant in a lineup as the shooter. Condon also identified defendant in court.

Defendant presented a theory of self-defense. Defendant testified that he and the four other men in the car were Gangster Disciples. On July 29, 1992, they went to 7512 S. Colfax, in Vice Lords' territory, to help one of the men move. While on Colfax, a Vice Lord approached and shot at them. The five Disciples then jumped in their car and drove down 75th Street. At the intersection of 75th and Phillips, they saw a man pointing a gun at the car. Defendant closed his eyes and fired three or four shots out the window in the man's direction.

On December 9, 1994, the jury returned its verdict finding defen-

dant guilty of first degree murder and aggravated battery with a firearm. The trial court ordered a presentence investigative report to be completed by January 4, 1995. The report gave the following psychological summary:

"The defendant maintained that when he was first processed into the Cook County Department of Corrections for his present incarceration, he was housed in the psychiatric division of the Division VIII Residential Treatment Unit. Also after being transferred to Division I *** he saw a mental health professional weekly for about a month.

The defendant stated during his time in Division VIII and part of his time in Division I *** he was prescribed both Haldol and Thorazine. He stated he is no longer taking either drug."

The report also stated that defendant spent a week at Hartgrove Hospital in 1988. While there, he was treated by mental health professionals. Defendant stated, according to the report, that his mother admitted him into the hospital " 'to find out if there was anything wrong with [him].' "

Defendant's sentencing hearing took place on January 20, 1995. The State argued in aggravation that defendant was found delinquent for committing robbery in 1989 and placed on probation. In 1990, defendant pleaded guilty to robbery and was sentenced to four years' imprisonment. In mitigation, defendant's mother, Patricia Green, testified that defendant had received in-patient and out-patient psychiatric counseling when he was eight or nine years old. She stated that he was diagnosed as hyperactive and received medication for his problem. Green testified that defendant would never intentionally hurt a child and that two months before the shooting, he saved two children from a fire. Defendant's relative, Gloria Johns Howard, testified that defendant is good with children and watched her children on several occasions. Howard never saw defendant act violently. Defendant stated at the hearing that he was sorry for the harm he had caused the victims, their families, and his own family. In argument, defense counsel requested leniency based on defendant's psychiatric history that was mentioned by his mother and encompassed in the presentence investigation. Defense counsel argued:

"Even to this day he is receiving prescription drugs over at the jail, which have to be prescribed by a doctor. It says he is receiving Thorazine and another drug. It is on page 6 of the presentence investigation."

The trial court sentenced defendant to 50 years for first degree murder and 10 years for aggravated battery with a firearm, to be served consecutively.

■ Defendant first contends that this cause should be remanded to determine whether his receipt of Thorazine and Haldol as reported in the presentence investigative report was proximate to the time of his trial or sentencing as to entitle him to a fitness hearing under section 104—21(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/104—21(a) (West 1994)). At the time defendant was tried and sentenced, that section provided in pertinent part:

"A defendant who is receiving psychotropic drugs or other medications under medical direction *is entitled to a hearing on the issue of his fitness* while under medication." (Emphasis added.) 725 ILCS 5/104—21(a) (West 1994).

In support of his argument that a limited remand is necessary to determine whether he was entitled to a fitness hearing pursuant to section 104—21(a), defendant relies primarily on *People v. Kinkead*, 168 Ill. 2d 394, 660 N.E.2d 852 (1995), *People v. McKay*, 282 Ill. App. 3d 108, 668 N.E.2d 580 (1996), and *People v. Johnson*, 276 Ill. App. 3d 656, 659 N.E.2d 22 (1995).

In *People v. Kinkead*, the defendant pleaded guilty to first degree murder, armed robbery, residential burglary, and home invasion and was sentenced to death. The defendant did not request a fitness hearing pursuant to section 104—21(a), but the trial court was aware that the defendant had been taking psychotropic medication. The presentence investigative report stated that a physician prescribed Thorazine while the defendant was in jail to treat his nerves and sleeplessness. Neither the report nor the record contained any further information, such as the specific dates the defendant received the medication. No fitness hearing was conducted.

The supreme court initially noted that "[r]ecent precedent of this court has construed section 104—21(a) as conferring upon defendants, as a matter of entitlement, the right to a mental competency hearing if they are being given psychotropic drugs under medical supervision during the time of their prosecution or sentencing." *Kinkead*, 168 Ill. 2d at 397, 660 N.E.2d at 853, citing *People v. Brandon*, 162 Ill. 2d 450, 643 N.E.2d 712 (1994); *People v. Gevas*, 166 Ill. 2d 461, 655 N.E.2d 894 (1995). The court went on to hold that where the record indicates that a defendant's use of psychotropic medication was proximate to the time he pleaded guilty and was sentenced, the trial court has a duty to further investigate the defendant's fitness for trial. Therefore, the defendant's failure to request a competency hearing did not constitute a waiver of the issue on appeal. Nevertheless, the record contained very little additional information regarding the time periods and other circumstances under which the defendant was administered Thorazine. Unlike in *Brandon* and *Gevas*, where new

trials were ordered, there was insufficient evidence to determine whether the administration of psychotropic drugs to the defendant was proximate enough in time to the critical stages of his criminal proceedings to trigger the right to a full fitness hearing pursuant to section 104—21(a). Therefore, under its supervisory power, the *Kinkead* court retained jurisdiction over the appeal but remanded the cause to the circuit court with instructions that it "conduct an inquiry into the factual circumstances surrounding defendant's asserted use of psychotropic medication while in prison." *Kinkead*, 168 Ill. 2d at 417, 660 N.E.2d at 862. Specifically, the circuit court was to inquire into the dates on which the defendant received and ingested such medication and whether the psychotropic drug treatment was linked closely enough to the time of the guilty plea and sentencing to have entitled the defendant to a competency hearing. The circuit court was to report back to the supreme court with its findings.

In *People v. McKay*, the defendant pleaded guilty to two counts of burglary and was sentenced. He contended on appeal that he was taking psychotropic medication during the proceedings below and was therefore entitled to a fitness hearing pursuant to section 104—21(a). The presentence investigation report contained indications that the defendant may have been taking psychotropic drugs. The report stated that the defendant claimed to have been in and out of hospitals and that he was seeing a psychiatrist for "medications monitoring." *McKay*, 282 Ill. App. 3d at 114, 668 N.E.2d at 582. At his sentencing hearing, his mother testified that the defendant was currently taking a drug called Stelazine, which improved his ability to think and communicate. The defendant testified that since being incarcerated, he had been on medication that made him "think better." *McKay*, 282 Ill. App. 3d at 110, 668 N.E.2d at 582. No fitness hearing was conducted.

The *McKay* court reiterated the supreme court's holding in *Kinkead* that a trial court has a duty to investigate where the record indicates that a defendant's use of psychotropic medication was proximate to the time he pleaded guilty and was sentenced. Under *Kinkead*, the court explained, the trial court was on notice or should have been on notice that it may have been obligated to conduct a fitness hearing pursuant to section 104—21(a). As in *Kinkead*, however, there were certain factual findings beyond the scope of the record on appeal that had to be made in order to determine whether the defendant was entitled to a hearing. The *McKay* court therefore declined to vacate the judgment against the defendant, but remanded the cause with specific instructions. The trial court was directed to determine (1) whether the defendant was actually taking Stelazine or

any other drug, either during or proximate to the time he pleaded guilty, and (2) whether Stelazine or any other drug the defendant may have been taking under medical direction was a psychotropic drug under section 104—21(a). If both questions were answered affirmatively, then the defendant was entitled to a fitness hearing. It would be "impossible," however, "to conduct a meaningful fitness hearing retrospectively *nunc pro tunc* the time of the defendant's original trial and sentencing." *McKay*, 282 Ill. App. 3d at 114, 668 N.E.2d at 585, citing *Kinkead*, 168 Ill. 2d 394, 660 N.E.2d 852. Therefore, the *McKay* court instructed, if the factual inquiry on remand revealed that the defendant was entitled to a fitness hearing pursuant to section 104—21(a), the trial court was to vacate the convictions. In closing, the court acknowledged that section 104—21(a) had been recently amended. Nevertheless, the preamendment version of the section applied to the defendant because his right, if any, to a fitness hearing would have accrued either at the time he pleaded guilty or when he was sentenced, both of which occurred prior to the effective date of the amended statute. *McKay*, 282 Ill. App. 3d at 114-15, 668 N.E.2d at 585-86.

In *People v. Johnson*, a limited remand was also ordered to determine whether and when a defendant ingested psychotropic drugs during the proceedings below. Relying on *Kinkead*, the court explained that "where the relationship between a defendant's use of psychotropic medications and the existence of a *bona fide* doubt of his fitness is not fully developed in the record, the reviewing court must remand for clarification of the circumstances surrounding defendant's use of psychotropic medications." *Johnson*, 276 Ill. App. 3d at 658, 659 N.E.2d at 24, citing *Kinkead*, 168 Ill. 2d 394, 660 N.E.2d 852. Very recently, in *People v. Birdsall*, 172 Ill. 2d 464, 670 N.E.2d 700 (1996), the supreme court stated:

"To summarize current Illinois law, an accused who is taking psychotropic drugs under medical direction at or near the time of trial or sentencing is entitled to a fitness hearing under section 104—21(a). [Citations.] Consistent with principles of due process, if an accused who is entitled to a fitness hearing is not accorded such hearing before being criminally prosecuted or sentenced, the conviction ordinarily must be reversed and the cause remanded for further proceedings. [Citations.] In certain circumstances, a limited remand to the circuit court may be ordered for the purpose of determining whether factual grounds for a section 104—21(a) competency hearing existed at the time of defendant's trial and sentencing." *Birdsall*, 172 Ill. 2d at 476, 670 N.E.2d at 706.

Turning to the present case, a limited remand is clearly neces-

sary to determine whether defendant was entitled to a fitness hearing. The presentence investigative report stated that defendant claimed to have been taking Thorazine and Haldol while incarcerated awaiting trial. The report went on to state that defendant was no longer taking either drug, but did not specify when he stopped. Also, although he did not request a fitness hearing, defense counsel referred to defendant's ingestion of "Thorazine and another drug" during his argument in mitigation. Defense counsel also stated that defendant was taking prescription drugs "even to this day." The record on appeal is devoid of any further information, however, making it impossible to determine whether defendant received psychotropic medication in close enough proximity to his trial and sentencing as to entitle him to a fitness hearing. As a result, we order a limited remand so that the trial court can inquire into the factual circumstances surrounding defendant's asserted psychotropic drug use. As in *McKay*, if the trial court's factual inquiry affirmatively determines that defendant was entitled to a mandatory fitness hearing due to his ingestion of prescribed psychotropic drugs during the critical stages of the criminal proceedings brought against him, the trial court is instructed to vacate defendant's convictions, as it would be impossible to conduct a meaningful fitness hearing retrospectively *nunc pro tunc* the time of defendant's original trial and sentencing.

■ Briefly, before leaving this issue, we note that the State's reliance on *People v. O'Bannon*, 195 Ill. App. 3d 430, 552 N.E.2d 397 (1990), is misplaced in that section 104—21(a) is not at issue in that case. We also reject the State's argument that the amended version of section 104—21(a) applies to defendant's situation. As the court in *McKay* noted, section 104—21(a) has been recently amended to read as follows:

> "A defendant who is receiving psychotropic drugs under medical direction is entitled to a hearing on the issue of his or her fitness while under medication; *however, no hearing is required unless the court finds there is a bona fide doubt of the defendant's fitness.*" (Emphasis added.) 725 ILCS 5/104—21(a) (West Supp. 1995).

Applying the analysis in *McKay*, defendant's right, if any, to a fitness hearing would have accrued before the amended statute became effective. The amended statute became effective December 13, 1995. Defendant, however, was tried in December 1994 and sentenced in January 1995. We further note that, in *Birdsall*, where the defendant directly appealed to the supreme court after being sentenced to death, the supreme court acknowledged the amendment to section 104—21(a) but did not find it applicable. In a footnote, the court

stated: "The amendment does not apply to the instant case and we therefore express no opinion regarding its effect on future cases after the effective date of the act." *Birdsall*, 172 Ill. 2d at 475 n.1, 670 N.E.2d at 706 n.1. As in *McKay* and *Birdsall*, it is the preamended version of section 104—21(a) that applies here.

■ We now turn to defendant's other contentions on appeal. First, the State concedes that the judgment order should be corrected to state that defendant was convicted of one count of first degree murder rather than two. Accordingly, in the event that the factual inquiry on remand does not require that the trial court vacate defendant's convictions, the trial court is instructed to make said correction.

Defendant also contends that the trial court abused its discretion in sentencing him. Specifically, defendant argues that the sentences imposed are excessive where he was 19 years old at the time of the offense, he expressed remorse for his conduct, and he had a history of psychiatric problems.

■ It is well established that a trial judge's sentencing decisions are entitled to great deference and weight. *People v. Streit*, 142 Ill. 2d 13, 566 N.E.2d 1351 (1991); *People v. Perruquet*, 68 Ill. 2d 149, 368 N.E.2d 882 (1977). A reasoned judgment as to a proper sentence must be based upon the particular facts and circumstances of each individual case. *People v. Smith*, 258 Ill. App. 3d 1003, 630 N.E.2d 1068 (1994). A sentence within the statutory guidelines that is alleged to be excessive will not be disturbed on review unless it is manifestly disproportionate to the nature of the offense. *People v. Moore*, 229 Ill. App. 3d 66, 593 N.E.2d 771 (1992).

In Illinois, the appropriate sentence for a Class X felony such as aggravated battery with a firearm is between 6 and 30 years. 720 ILCS 5/12—4.2(a)(1) (West 1994); 730 ILCS 5/5—8—1(a)(3) (West 1994). For first degree murder, a term shall not be less than 20 years and not more than 60 years. 730 ILCS 5/5—8—1(a)(1)(a) (West 1994). When a defendant is convicted of first degree murder of a person under 12 years old, he may be sentenced to an extended-term sentence of not less than 60 years and not more than 100 years. 730 ILCS 5/5—5—3.2(b)(4)(i), 5—8—2(a)(1) (West 1994). Where multiple offenses are part of a single course of conduct, consecutive sentences are mandatory if at least one of the offenses is a Class X or Class 1 felony and serious bodily harm was inflicted. 730 ILCS 5/5—8—4(a) (West 1994).

■ Applying these principles and guidelines, we hold that the trial court did not abuse its discretion in sentencing defendant to consecutive terms of 50 years for the murder of three-year-old Do-

minique Wright and to 10 years for committing aggravated battery with a firearm against Dominique's mother, Deidre. The trial court told defendant: "The testimony indicated you closed your eyes when you fired those shots into the crowd on a corner, and that shows a total disregard of human life on your behalf." The trial court was mindful of the particularly heinous and brutal facts involved here and imposed sentences well within the statutory limits. We do not find the sentences excessive.

Accordingly, this cause is remanded for the limited purpose of determining whether defendant was entitled to a fitness hearing pursuant to section 104—21(a). If the factual inquiry on remand reveals that defendant ingested psychotropic medication under medical direction at the time he was prosecuted or sentenced, the trial court is instructed to vacate defendant's convictions. If defendant was not entitled to a fitness hearing pursuant to section 104—21(a), his convictions and sentences will stand, but the trial court is instructed to correct the judgment order to reflect that defendant was convicted of one count of first degree murder, rather than two, and one count of aggravated battery with a firearm.

Remanded with directions.

ZWICK and LEAVITT, JJ., concur.