THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM F. STRAUB, Defendant-Appellant.

Fourth District     No. 4—96—0340

Opinion filed September 25, 1997.

194

Daniel D. Yuhas and Michele A. Knapp, both of State Appellate Defender's Office, of Springfield, for appellant.

Michael D. Clary, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Perry Miller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Following jury trial in the circuit court of Vermilion County, defendant William F. Straub was found guilty of second degree murder. Ill. Rev. Stat. 1991, ch. 38, par. 9—2(a). Defendant was sentenced to four years' imprisonment, with credit for eight days previously served. The issue on appeal is whether defendant was denied due process and the effective assistance of counsel because he was not provided a hearing to determine his fitness to stand trial and defense counsel never requested such a hearing. We affirm.

On September 28, 1992, defendant was charged by information with aggravated battery of Danny Meyers. Ill. Rev. Stat. 1991, ch. 38,

par. 12—4(b)(1). Defendant posted bond the same day. On October 9, 1992, a first-amended information was filed alleging three counts of first degree murder (Ill. Rev. Stat. 1991, ch. 38, pars. 9—1(a)(1), (a)(2), (a)(3)) in addition to a renewed charge of aggravated battery. At the October 21, 1992, arraignment, the defendant's attorney made the trial court aware of the mental health limitations defendant had as a result of a work-related injury. At the pretrial conference on September 24, 1993, the trial court noted the defendant had filed a copy of a letter from Dr. David G. Jarmon, a clinical psychologist, in an attempt to raise a *bona fide* doubt of defendant's fitness to stand trial. The letter indicated two separate examinations of defendant by Jarmon, on December 20, 1988, and April 30, 1993, at the request of the Disability Determination Office in Indianapolis, Indiana. The report indicated defendant suffered from significant dementia after being struck in the head by a concrete block in 1979. The trial court found no *bona fide* doubt had been raised but allowed defendant to request to be examined prior to trial to determine his fitness to stand trial. An order for examination was entered on September 24, 1993. On October 20, 1993, defendant was examined by Dr. M.E. Stebbins. Defendant, in a motion to continue, also indicated he intended to submit for examination to Dr. Patrick D. Brophy. Although defense counsel indicated he had seen a copy of Stebbins' report, it is not in the record on appeal. In objecting to defendant's motion for continuance, the assistant State's Attorney indicated that the only information supplied to the trial court showed defendant fit to stand trial.

On December 11, 1995, at a motions hearing, the defendant indicated he was scheduled to undergo surgery. He had been getting epidural shots in the spine for his back pain. He was also taking Demerol, Vicodin, Motrin, Septra, water pills, and quinine for cramps in his lower legs. The trial judge inquired as to the effect of these medications on defendant and whether it made it difficult for defendant to understand what he was saying. Defendant stated it did make it difficult to understand. He could read something four or five times before comprehending the first sentence. At that hearing, he understood the trial court wanted to know if he wanted Mike McFatridge to be his attorney. Defendant indicated he wanted McFatridge to be his attorney even though he understood McFatridge represented a possible witness for the State and would have to cross-examine that witness on defendant's behalf. The trial court also indicated it had received a letter dated December 7, 1995, from defendant's neurologist in reference to defendant's back pain. In that letter, she stated her opinion that defendant was presently unable to assist in the defense of his trial, but if he was off his pain medication,

then defendant's normal impairments would also render him unable to assist at trial. The assistant State's Attorney questioned the neurologist's qualifications to make that determination. Defendant's counsel stated defendant was "not raising the issue of fitness," but was seeking a continuance because defendant was in pain and taking pain medication that would prejudice him. Defendant's attorney indicated he thought the surgery would alleviate the pain so defendant could drop the medication.

Brophy interviewed defendant on February 3, 1993, February 10, 1993, and February 20, 1994. Finally, on February 5, 1996, defendant filed a copy of Brophy's February 5, 1996, report. Brophy's report makes no mention of any medication being taken by defendant. Brophy agreed with Jarmon's diagnosis of significant dementia secondary to the 1979 head trauma. Brophy found defendant's problem-solving skills were particularly inflexible and that he was often unable to evaluate novel tasks. Brophy indicated such persons typically do not function well under stress and are easily confused. However, in spite of the fact that one of the reasons for the referral was to assess defendant's capacity to stand trial, Brophy's report made no conclusion on that subject.

On February 6, 1996, prior to the selection of the jury, the trial court inquired of defendant's counsel if he wanted to make a statement for the record concerning medication and defendant's fitness. Defendant's attorney stated that, if he believed there was a legitimate issue of fitness, he would be obligated to raise the issue, but he was not raising the issue at the present time. Defendant stated his medication had changed significantly in the previous three years and he was currently taking 100 milligrams of Demerol every $1^1/2$ to 2 hours for pain in his low back and hips. He further indicated he took quinine for leg cramping, water pills, and medication for "dysentery." He also received a spinal injection on the previous Friday. He took Motrin and seizure medication. The trial court then asked for a list of his medications. Defendant stated he cut down on his medication that day so he would be able to comprehend everything being said. He indicated he had a little trouble with his speech, but that he understood what was being said. The trial court then inquired as to what defendant understood had transpired in court that morning, and defendant said there was nothing he wanted the trial judge to go over. Defendant had conferred with his attorney that morning. The trial court found no *bona fide* doubt of fitness to stand trial based on its observations of defendant, a review of the doctor's report, and the representation of defendant's attorney.

On February 8, 1996, a handwritten list of defendant's medica-

tions was filed. That list indicated defendant was prescribed (1) one Vicodin Extra Strength four times a day; (2) $1^1/2$ Demerol tablets every four to six hours, or as needed; (3) one Motrin with meals three times a day, alternating every other day with Ketoprofen; (4) one quinine tablet each evening; (5) one "Diphen/athrop" four times a day for loose bowel movements; (6) one Dilantin capsule three times a day for seizures; (7) one capsule of "Triamt/HCTZ 50/25," generic for Dyzide, each morning for fluid buildup; (8) one Valium tablet three times a day; and (9) periodic spinal injections for severe pain. At trial, defendant testified that, in September 1992, he had been taking Motrin and Vicodin for pain, water pills, quinine, and Valium. After being found guilty of second degree murder, defendant was sentenced on April 17, 1996. At that hearing, defense counsel stated he had a discussion with defendant concerning the list filed in February 1996. Defendant had a prescription for Demerol but was not then taking it. Nor was he taking Diphen. Defendant's counsel further stated to the court "he also said he may not necessarily be taking Valium." Defendant had taken Vicodin for his back pain $1^1/2$ hours prior to the beginning of the hearing. Defendant, who was present in court when defense counsel made these statements, made no comment regarding the statements by defense counsel.

On appeal, defendant's entire argument rests on the reference in the list filed February 8, 1996, to Valium. The State's argument appears to accept defendant's characterization of Valium as a psychotropic medication.

■ Defendant did not request a fitness hearing or raise this contention in his posttrial motion. Ordinarily such a failure would result in waiver of the issue on appeal. *People v. Brandon*, 162 Ill. 2d 450, 457, 643 N.E.2d 712, 715 (1994). However, a violation of defendant's right not to be tried while unfit is a deprivation of his right to due process so fundamental (*Brandon*, 162 Ill. 2d at 455-56, 643 N.E.2d at 715) that the issue may not be waived (*People v. Kinkead*, 168 Ill. 2d 394, 406-07, 660 N.E.2d 852, 857 (1995)).

■ Defendant also attempts to avoid waiver by raising the issue as ineffective assistance of counsel for failing to request a hearing. To demonstrate ineffective assistance of counsel, defendants must show (1) defense counsel's representation fell below an objective standard of reasonableness, and (2) had it not been for the unprofessional errors of defense counsel, the result of the proceedings would have been different. If it is easier to dispose of the ineffectiveness claim on the grounds of lack of sufficient prejudice to defendant, it is not necessary to first address whether defense counsel's performance was deficient. *People v. Albanese*, 104 Ill. 2d 504, 525-27, 473 N.E.2d 1246, 1255-56 (1984).

■ A defendant is presumed to be fit to stand trial, plead, and be sentenced, but he may be found unfit to stand trial "if, because of a mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." *Brandon,* 162 Ill. 2d at 456, 643 N.E.2d at 715. A defendant is fit to stand trial if he understands the nature and purpose of the proceedings against him and is able to assist in his defense. 725 ILCS 5/104—10 (West 1994); *People v. Sandham,* 174 Ill. 2d 379, 382, 673 N.E.2d 1032, 1033 (1996). The circuit court has a duty to order a fitness hearing, *sua sponte,* if there is a *bona fide* doubt of the defendant's fitness to stand trial. 725 ILCS 5/104—11(a) (West 1994). Whether a *bona fide* doubt exists generally rests within the trial court's discretion. *Sandham,* 174 Ill. 2d at 382, 673 N.E.2d at 1033.

■ At the time of the commission of the offense in this case, section 104—21(a) of the Code provided in relevant part: "A defendant who is receiving psychotropic drugs or other medications under medical direction is entitled to a hearing on the issue of his fitness while under medication." 725 ILCS 5/104—21(a) (West 1992). This statute has been interpreted as requiring a fitness hearing if the defendant was taking psychotropic medication in proximity to the trial or sentencing proceedings. *People v. Nitz,* 173 Ill. 2d 151, 160, 670 N.E.2d 672, 676 (1996); *Brandon,* 162 Ill. 2d at 460-61, 643 N.E.2d at 717. The Supreme Court of Illinois has construed the statute as legislative recognition that the administration of psychotropic drugs to defendant equates with a *bona fide* doubt of fitness. *Nitz,* 173 Ill. 2d at 159, 670 N.E.2d at 675.

After an amendment to this section (Pub. Act 89—428, § 605, eff. December 13, 1995 (1995 Ill. Laws 4453, 4578-79)) was declared unconstitutional (*Johnson v. Edgar,* 176 Ill. 2d 499, 517-18, 680 N.E.2d 1372, 1380-81 (1997)), section 104—21(a) of the Code was again amended. Public Act 89—689, § 90, eff. December 31, 1996 (1996 Ill. Laws 3775, 3792). Section 104—21(a) of the Code now provides: "A defendant who is receiving psychotropic drugs shall not be presumed to be unfit to stand trial solely by virtue of the receipt of those drugs or medications." 725 ILCS 5/104—21(a) (West 1996).

The State argues that this amendment relates to a procedure and, therefore, may be given retrospective application. However, in *People v. Birdsall,* 172 Ill. 2d 464, 475 n.1, 670 N.E.2d 700, 706 n.1 (1996), the Supreme Court of Illinois stated that the December 13, 1995, amendment to section 104—21(a) was not applicable to a direct appeal in which that court's opinion was filed June 20, 1996. In *Nitz,* the court stated:

"Incidentally, since our decisions in *Brandon, Gevas* and

*Kinkead,* the legislature has amended section 104—21(a) to provide that no fitness hearing is required unless the court finds that there is a *bona fide* doubt of the defendant's fitness. Pub. Act 89—428, § 605, eff. December 13, 1995, amending 725 ILCS 5/104—21(a). The State does not suggest that the statute, as amended, has application in these proceedings.

Nevertheless, we find it appropriate to note the rule that amendatory acts which are procedural in nature have retrospective operation for matters which are *pending* on the effective date of the amendment or are subsequently filed. 82 C.J.S. *Statutes* § 432 (1953); see also *Hogan v. Bleeker,* 29 Ill. 2d 181, 184[, 193 N.E.2d 844, 847] (1963). As this is a collateral matter, the amendment, though procedural in nature, does not apply. *Cf. Eddmonds,* 143 Ill. 2d at 523[, 578 N.E.2d at 962] (postconviction petitioner not entitled to fitness hearing under section 104—21 of statute since he was not receiving medication when that statute became effective). Further, while the General Assembly can pass legislation to prospectively change a judicial construction of a statute if it believes that the judicial interpretation was at odds with legislative intent, it cannot effect a change in that construction by a later declaration of what it had originally intended." *Nitz,* 173 Ill. 2d at 162-63, 670 N.E.2d at 677.

Even though the supreme court declined to apply the amendment in a direct appeal in *Birdsall,* the State uses the language in *Nitz* to argue that, had *Nitz* not been a collateral postconviction proceeding, the supreme court would have applied the amendment there. However, the statement in *Nitz* appears to be only a recognition of the applicable rules concerning the retroactive operation of procedural amendments while noting (1) the issue had not been raised and (2) even if it had been raised, it had no application to that case.

The critical stage of when a defendant is entitled to a fitness hearing is at the time of trial and sentencing. *People v. Johns,* 285 Ill. App. 3d 849, 852-55, 674 N.E.2d 882, 884-86 (1996). In *People v. McKay,* 282 Ill. App. 3d 108, 115, 668 N.E.2d 580, 586 (1996), the defendant's right to a fitness hearing was found to have accrued at the time of the guilty plea. When a right to a fitness hearing has already accrued, a subsequent amendment to the statute would impermissibly retroactively impair a vested right if applied on appeal. Therefore, we decline to apply the current version of the statute to the case at bar.

■ Nevertheless, we find no reversible error in this case. In *People v. Hanna,* 288 Ill. App. 3d 109, 117 (1997), this court declined to remand for the limited purpose of determining whether defendant was denied due process by the failure to afford him a fitness hearing.

In *Hanna*, defendant was charged in November 1994, tried in September 1995, and sentenced in November 1995. Defendant argued on appeal that medical records showed he had a cardiac catheterization in February 1994 and again in June 1995, for which he was prescribed Valium. This court rejected defendant's contention that this isolated reference in his voluminous hospital records was sufficient to require remand to determine whether he was entitled to a fitness hearing.

In this case, the trial court did not commit an abuse of discretion by not conducting a fitness hearing. Defendant never informed the trial court he was taking Valium at the time of the trial, even though he may have had a prescription for it. Even at sentencing, he did not say he was taking Valium. Two evaluations of defendant did not find him unfit to stand trial, including that of defendant's own examining psychologist. Brophy's report was dated shortly before trial began. The trial court was fully aware of defendant's physical and mental problems and his medications. Nevertheless, the trial court took great pains to assure that defendant's medication was not affecting his ability to understand the proceedings and cooperate in his defense. Defendant's counsel understood his obligation to raise fitness as an issue if defendant had difficulty in these areas, but counsel did not do so. The trial court could rely on defense counsel's representation that there had been no problem. In addition, defendant's behavior was not so aberrant as to raise a doubt of his ability to function within the context of the trial. See *People v. George*, 263 Ill. App. 3d 968, 980, 636 N.E.2d 682, 690-91 (1993). When asked by the trial court on several occasions to describe the medications he was taking at or near the time of trial, defendant never mentioned Valium. Although it may have been prescribed, if defendant was not taking it, no *bona fide* doubt of fitness is raised.

We also find no ineffective assistance of counsel. The issue of defendant's fitness was clearly before the trial court. Since the trial court had a duty to order a fitness hearing *sua sponte* if there was a *bona fide* doubt of defendant's fitness and since defendant has demonstrated no entitlement to a fitness hearing, defendant was not prejudiced by the failure of defense counsel to request a fitness hearing.

The judgment of the circuit court of Vermilion County is affirmed.

Affirmed.

KNECHT and COOK, JJ., concur.