FIRST DIVISION 

August 27, 2001

No. 1-00-0219

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee, 

v.

HECTOR MARQUEZ,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Thomas R. Sumner
,

Judge Presiding.

JUSTICE O’MARA FROSSARD delivered the opinion of the court:

Following a bench trial, defendant Hector Marquez was convicted of criminal drug conspiracy and sentenced to a 15-year prison term.  The judgment was affirmed on direct appeal.  
People v. Marquez
, No. 1-97-4013 (1999) (unpublished order under Supreme Court Rule 23).  Defendant subsequently filed a 
pro se
 petition for post-conviction relief, which the trial court summarily dismissed as frivolous and patently without merit.  Defendant contends on appeal that his petition stated the gist of several meritorious claims: (1) that he did not voluntarily and intelligently waive his right to a jury trial; (2) that he was deprived his right to confront his accusers and be present at every stage of the trial; and (3) that he received ineffective assistance of counsel.

I. BACKGROUND

Defendant’s conviction was the result of a 1996 Drug Enforcement Administration (DEA) investigation of several people believed to be involved in the sale of large amounts of cocaine in Chicago.  The facts are set forth in this court’s order on direct appeal and will be repeated here only as necessary. 
 People v. Marquez
, No. 1-97-4013 (1999) (unpublished order under Supreme Court Rule 23).

In his 
pro se
 post-conviction petition and supporting memorandum, defendant alleged that he is of Mexican descent, speaks a Spanish dialect that differs greatly from the “normal” Spanish dialect spoken in the United States, speaks little English, and had a “grossly inadequate” understanding of the American judicial system.  Defendant asserted that at the time he waived his right to a jury, he did not understand what was happening in court and “was just told by his counsel to answer ‘yes’ “ to the trial court’s questions.  Defendant contended that because he did not have the aid of a certified interpreter,  he did not voluntarily and intelligently waive his right to a jury trial, he was deprived of his right to confront his accusers, and he was deprived of his right to be present at trial.  Defendant argued that his trial counsel was ineffective for failing to discredit testimony from the confidential informant by showing his interest, bias, and motive to testify falsely.  In support of his petition, defendant attached portions of the trial transcript.

II. ANALYSIS

The Post-Conviction Hearing Act (Act) establishes a three-step process for adjudicating petitions for post-conviction relief.  725 ILCS 5/122-1 
et seq
. (West 1998).  A petition must clearly set forth sufficient facts demonstrating the way  in which the petitioner’s constitutional rights were violated.  725 ILCS 5/122-2 (West 1998).  At the first stage, the court is not to consider the petition on the merits.  Instead, the court considers the petition, with no input from the State in order to determine if it is frivolous and patently without merit.   If the court determines within 90 days of its filing that the petition is frivolous or patently without merit, it must summarily dismiss the petition.  725 ILCS 5/122-2.1(a)(2) (West 1998).  If the petition is not dismissed, the State is required at the second stage to answer the petition or file a motion to dismiss.  725 ILCS 5/122-5 (West 1998).  If the court does not dismiss the petition on the State’s motion then an evidentiary hearing is conducted at the third and final stage of the process.  
People v. Hernandez
, 283 Ill. App. 3d 312, 316 (1996). 

In this case, the proceeding was only in the first stage.  “At the dismissal stage of a post-conviction proceeding, all well-pleaded facts that are not positively rebutted by the original trial record are to be taken as true.”  
People v. Coleman
, 183 Ill. 2d 366, 385 (1998).
  The summary dismissal of a post-conviction petition is subject to 
de novo
 review.  
Coleman
, 183 Ill. 2d at 380-81, 388-89.  A 
pro se
 petition is to be construed liberally.  
People v. Smith
, 268 Ill. App. 3d 574, 580 (1994).  A 
pro se
 petition is required to state the gist of a meritorious constitutional claim in order to survive summary dismissal.  
Coleman
, 183 Ill. 2d at 380 n.2.  However, the gist of a meritorious claim is not established by a bare allegation of a deprivation of a constitutional right.  
People v. Prier
, 245 Ill. App. 3d 1037, 1040 (1993).  A 
pro se
 defendant must allege sufficient facts from which the trial court could find a valid claim of deprivation of a constitutional right.  
People v. Lemons
, 242 Ill. App. 3d 941, 946 (1993).  The allegations in a 
pro se
 post-conviction petition must be supported by the record or accompanying affidavits or other evidence.  725 ILCS 5/122-2 (West 1998); 
People v. Seaberg
, 262 Ill. App. 3d 79, 82 (1994).  Alternatively, the petition must state why supporting affidavits, records, or other forms of evidence are not attached.  725 ILCS 5/122-2 (West 1998).

A post-conviction proceeding is a collateral attack on a judgment of conviction and is limited to constitutional issues that have not been, and could not have been, presented on direct appeal.  
People v. Franklin
, 167 Ill. 2d 1, 9 (1995).  Issues decided by a reviewing court on direct appeal are barred by 
res judicata
, and any issue that could have been presented on direct review is considered waived for post-conviction review.  
Franklin
, 167 Ill. 2d at 9. 

A. Jury Waiver

Defendant’s first contention on appeal is that his petition stated the gist of a meritorious claim that he did not voluntarily and intelligently waive his right to a jury trial.  He claims he did not have a sufficient command of the English language to understand the trial court’s admonitions.  He contends that the record demonstrates that he was deprived of an interpreter even after the assistant State’s Attorney questioned his ability to understand English on two separate occasions.  Defendant alleged that he speaks an unusual Spanish dialect, speaks little English, and had a “grossly inadequate” understanding of the American judicial system at the time of his trial.  He also asserted that at the time he waived his right to a jury, he did not understand what was transpiring in the court and “was just told by his counsel to answer ‘yes’ “ to the trial court’s questions. 

The State argues that because defendant did not raise this issue on direct appeal, it is waived.  However, the waiver rule may be relaxed where the facts relating to the claim do not appear in the original appellate record, where the defendant’s arguments stem from the incompetency of the original appellate counsel, or where fundamental fairness so requires.  
People v. Hayes
, 279 Ill. App. 3d 575, 580 (1996).  We are mindful of the importance of the right to a jury trial, and we review defendant’s claim that his jury waiver was invalid based on the third exception, fundamental fairness.  
People v. Tooles
, 177 Ill. 2d 462, 465 (1997).

The right to trial by jury is fundamental to the American criminal justice system.  
Duncan v. Louisiana
, 391 U.S. 145, 149, 20 L. Ed. 2d 491, 496, 88 S. Ct. 1444, 1447
 (1968).  Both the United States Constitution and the Illinois Constitution provide for jury trials in criminal cases.  U.S. Const. amends. VI & XIV; Ill. Const. 1970, art. 1, secs. 8, 13.  Section 103-6 of the Code of Criminal Procedure provides that every person accused of a crime has the right to a jury trial unless that right is “understandingly waived by the defendant in open court.”  725 ILCS 5/103-6 (West 1998).   To be valid, this waiver must be in writing.  725 ILCS 5/115-1 (West 1998). The determination of whether this right has been validly waived does not rest on any precise formula but, rather, turns on the facts of each particular case.  
People v. Frey
, 103 Ill. 2d 327, 332 (1984).  A written and signed jury waiver “ ‘lessens the probability that the waiver was not made knowingly.’ “ 
 People v. Dockery
, 296 Ill. App. 3d 271, 276 (1998), quoting 
People v. Steiger
, 208 Ill. App. 3d 979, 982 (1991).  “All the trial judge has to do, at the bare minimum, is ask the defendant if he understands he is giving up his right to have a jury decide his case and if that is something he wants to do.”  
Dockery
, 296 Ill. App. 3d at 277.  Of course, the trial judge should first determine whether the defendant understands what is meant by a jury trial. 

The Illinois Supreme Court has indicated no requirement that the record “ ‘affirmatively establish that the court advised defendant of his right to a jury trial and elicited his waiver of that right [citation], nor that the court or counsel advised defendant of the consequences of the waiver.’ “  
Dockery
, 296 Ill. App. 3d at 275, quoting 
Frey
, 103 Ill. 2d at 332.  The supreme court has also concluded that if a defendant is present when the court and defense counsel discuss a jury trial waiver and the defendant does not object to the waiver, the defendant is deemed to have acquiesced in the waiver.  
People v. Sailor
, 43 Ill. 2d 256, 260 (1969).  However, the Illinois Supreme Court has also recognized the duty imposed on the circuit courts “of ensuring that a defendant’s waiver of his right to a jury trial be made expressly and understandingly.”  
People v. Smith
, 106 Ill. 2d 327, 334 (1985).  We review defendant’s jury waiver in this case in the context of whether the record reflects the waiver was made expressly and understandingly thereby positively rebutting defendant’s post-conviction claim that he did not voluntarily and intelligently waive jury trial.

Here, the first time defendant spoke on the record was when he was informed of the possibility of trial in absentia:

“THE COURT: Let me do this first.  Mr. Garcia?

MR. GARCIA [codefendant]: Yes.

THE COURT: Mr. Hector Marquez?

[DEFENDANT]: Yes.

THE COURT: And Mr. Perez?

MR. PEREZ [codefendant]: Yes.

THE COURT: I have to advise you, at this time, that you have to be in court on each and every occasion that you are required to be there.  If you don’t this case could proceed to trial against you even if you aren’t in court, if you don’t show up.  If that happens and if you’re found guilty at that trial then you could be sentenced even though you’re not there.  Do you understand that?

MR. GARCIA: Yes.

MR. PEREZ: Yes.

THE COURT: And that applies to you as well, Mr. Marquez.  In the event you make bond, you still have to come to court on each and every occasion.  If you don’t the case could go to trial against you without your being present.  If you’re found guilty at the trial, then you could be sentenced in your absence.  Do you understand that?

MR. MARQUEZ: Yes, sir.”

The issue of defendant’s ability to understand English was addressed for the first time when the case was called again the same day:

“[ASSISTANT STATE’S ATTORNEY]: *** Also unaware -- we weren’t sure whether this defendant, Hector Marquez, understood English and he was admonished to trial in absentia rights this morning.

THE COURT: Do you understand what I told you this morning?

[DEFENDANT]: Yes.

THE COURT: Earlier about having to be in court in the event you make bond?

[DEFENDANT]: Yes.

THE COURT: Okay.  So he understood that.

[DEFENSE COUNSEL]: I have no problems with his knowledge of the English language.

THE COURT: Okay.  Just the other person.  All right.  Okay.  Well, October 10th.”

The next time defendant spoke on the record was at the hearing on the motion to suppress, when he responded “yes” to defense counsel’s question whether he understood that he had the right to testify if he so desired. 
 Later, after examining an arresting officer at the hearing on defendant’s motion to suppress, defense counsel stated, “Your Honor, I have no further questions at this time, nor does my client request me to ask any further questions.  Although for purposes of the record, although my client does have an Hispanic last name, there is no need for an interpreter, and he has not requested one.”  

Then, at the beginning of defendant’s trial, the trial court, defense counsel, and defendant discussed defendant’s jury waiver and defendant’s ability to understand English:

“THE CLERK: Hector Marquez.

[ASSISTANT STATE’S ATTORNEY]: Does your client use an interpreter.

[DEFENSE COUNSEL]: No.

THE COURT: Do you have the jury waiver?

[DEFENSE COUNSEL]: Yes, your Honor.

THE COURT: Mr. Marquez, your lawyer just handed me this document that I saw you sign.  You just heard me explain to you what a jury trial is.  Do you understand that a jury trial is where 12 people listen to the evidence and then they decide the question of innocence or guilt in your case?

THE DEFENDANT: Yes, sir.

THE COURT: Rather than to have a Judge decide the question of innocence or guilt, is that right?

THE DEFENDANT: Yes.

THE COURT: When you signed this document you’re indicating that you wish to give up your right to have a jury decide your case and you want to have me decide the question of innocence or guilt in your case, do you understand that?

THE DEFENDANT: Yes.

THE COURT: Is that what you wish to do?

THE DEFENDANT: Yes, sir.

THE COURT: Okay.  I’ll accept the jury waiver.

***

[ASSISTANT STATE’S ATTORNEY]: This is the Spanish interpreter we’re going to utilize for our second witness.

THE COURT: Ready?

[DEFENSE COUNSEL]: Yes.

THE COURT: Any opening remarks?

[ASSISTANT STATE’S ATTORNEY]: Yes, Judge.

THE COURT: State.

[DEFENSE COUNSEL]: Excuse me, your Honor.  Before we begin can I indicate also that although my client is of Hispanic origin, he does not have the need for an interpreter, is that correct?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: We have one available for you but you don’t feel the need for it, is that right?

THE DEFENDANT: Right.

[DEFENSE COUNSEL]: Thank you, your Honor, for allowing me.”

After the close of the State’s case, defense counsel indicated to the trial court that defendant was fully aware of his right to testify, but chose to remain silent.  Finally, at the sentencing hearing, defendant responded “No” to the trial court’s question as to whether there was anything he wished to say.

The Criminal Proceeding Interpreter Act provides the following regarding appointment of an

interpreter:

“Whenever any person accused of committing a felony or misdemeanor is to be tried in any court of this State, the court shall upon its own motion or that of defense or prosecution determine whether the accused is capable of understanding the English language and is capable of expressing himself in the English language so as to be understood directly by counsel, court or jury.  If the court finds the accused incapable of so understanding or so expressing himself, the court shall appoint an interpreter for the accused whom he can understand and who can understand him.”  725 ILCS 140/1 (West 1996).

Defendant was given the opportunity to have an  interpreter; however, both defendant and defense counsel indicated that an interpreter was not needed.  Defendant noted in the memorandum supporting his petition that an interpreter who spoke “a [S]panish dialect” was available and “on stand-by.”  When the assistant State’s Attorney specifically asked defense counsel, “Does your client use an interpreter?”, defense counsel responded, “No.”  The trial court noted that he observed the defendant sign the written jury waiver.  After the court accepted the written jury waiver, the assistant State’s Attorney indicated, “This is the Spanish interpreter we’re going to utilize for our second witness.”  The trial court asked if there would be any opening statements and at that point defense counsel said, “Excuse me, your Honor, before we begin can I indicate also that although my client is of Hispanic origin, he does not have the need for an interpreter, is that correct?”, to which defendant responded, “Yes.”  Defense counsel further explained, “We have one available for you, but you don’t feel the need for it, is that right?”, to which defendant answered, “Right.”

The record indicates that defendant signed a written jury waiver in court and did not object when his trial counsel and the trial court discussed the waiver.  Moreover, the trial court questioned defendant regarding his understanding of the right to a jury trial, and defendant responded to the trial court’s questions in English.  Immediately before beginning trial defendant twice indicated that he had no need for an interpreter.  
In fact, the Spanish interpreter was used with the State’s second witness.  Although defendant did not say anything during the proceedings other than “Yes,”  “Yes, sir,” “Right,” and “No,” defense counsel indicated four separate times that defendant understood English and did not need to use a Spanish interpreter, even though one was available and present in the courtroom.

Although we have found no case addressing the question of whether a trial court can rely on defense counsel’s representations that his client had no need for an interpreter, we find 
People v. Straub
, 292 Ill. App. 3d 193 (1997), instructive.  In 
Straub
, the defendant argued the court abused its discretion by not conducting a fitness hearing.  In rejecting that argument, the appellate court recognized that defense counsel understood his obligation to raise fitness as an issue if warranted and concluded that the trial court could rely on defense counsel’s representations that there were no fitness problems with his client.  Here, similarly defense counsel understood his obligation to request the interpreter’s services if defendant did not understand English sufficiently, and the trial court was entitled to rely on defense counsel’s representations that the interpreter was not needed.  See 
Straub
, 292 Ill. App. 3d at 200.  Moreover, in addition to defense counsel’s representations, the defendant himself twice indicated on the record that he had no need for an interpreter.

Finally, the defendant has a prior conviction for possession of cocaine with intent to deliver, which indicates that he has had contact with the criminal justice system.  Defendant in 1989 was sentenced to five years in federal prison with four years supervised release probation beginning on April 24, 1992.  Defendant obtained his GED while incarcerated at the Big Spring Federal Correctional Center in Texas in 1990.  Defendant was employed in the Chicago area as a construction worker in 1996 and worked for a welding corporation from 1994-1996.  At the time of his arrest he had resided in the Chicago area for approximately four years.  Defendant’s allegations that he did not voluntarily and intelligently waive his right to a jury trial because he did not have a sufficient command of the English language to understand the trial court’s admonitions are positively rebutted by the record.  Therefore, defendant’s allegation of a deprivation of a constitutional right fails to state the gist of a meritorious claim.

Defendant directs our attention to a 
habeas corpus
 case from California, 
In re Muraviov
, 192 Cal. App. 2d 604, 13 Cal. Rptr. 466 (1961), for the proposition that a petitioner’s answers of “yes” or “no” to a judge’s questions, including the question “Do you understand and speak English?”, have no meaning when the petitioner does not understand English.  
Muraviov
 held that the petitioner’s conviction was void because he was not accorded due process of law and his constitutional and statutory right to be represented by counsel was violated.  
Muraviov
, 192 Cal. App. 2d at 605, 13 Cal. Rptr. at 467.

Muraviov
 is distinguishable from this case.  The petitioner in 
Muraviov
 was not represented by counsel at his arraignment or trial and was not offered the aid of an interpreter.  Here, in contrast, defendant was represented by counsel at arraignment, during hearing on the pretrial motions and at trial.  Moreover, an interpreter was available even though defense counsel repeatedly indicated that defendant understood English and defendant himself indicated more than once that he did not need an interpreter.  An interpreter was available for use by the defendant, and in fact was used with one of the witnesses for the State.  The 
Muraviov
 court found that the record, together with its own observation and interrogation of the petitioner at the hearing, sufficiently established that the petitioner did not speak or understand English.  
Muraviov
, 192 Cal. App. 2d at 605-06, 13 Cal. Rptr. at 467.  In this case, nothing beyond defendant’s own self-serving statements in his post-conviction petition supports his claim that he does not understand English, and in fact, his trial counsel’s repeated statements in the record positively rebut such a claim.  Defendant’s own answers regarding his need for an interpreter also positively rebut his claim.  Given these circumstances, we are not persuaded by 
Muraviov
.

We are also not persuaded by the three Illinois cases to which defendant compares his case.  In 
People v. Ruiz
, 24 Ill. App. 3d 449, 450 (1974), the defendant claimed in a post-conviction petition that he did not have either a sufficient command of the English language or an adequate understanding of the United States judicial system to waive his right to trial by jury, alleged that the interpreter “did not speak good Spanish,” and asserted that in explaining trial by jury to him, the interpreter merely told him that “a jury was 12 people.”  The record did not show statements made by the defendant or colloquy between the defendant and the interpreter, but did include a statement by the trial court that “defendant waived trial by jury ‘as explained by the interpreter,’ “ and indicated that defendant could not sign the jury waiver and was nervous.  
Ruiz
, 24 Ill. App. 3d at 451-53.  

The appellate court found that the factual allegations in the petition were supported by the transcript of proceedings and reversed the summary dismissal of the petition.  
Ruiz
, 24 Ill. App. 3d at 453.  Here, in contrast, the trial court addressed defendant directly and defendant answered the trial court’s questions in English.  Additionally, trial counsel repeatedly stated that defendant understood English and did not need to use an interpreter.  Moreover, upon accepting defendant’s written jury waiver, the trial court indicated that it had observed defendant sign the document waiving a jury trial.  Thus, 
Ruiz
 is distinguishable.

In 
People v. Phuong
, 287 Ill. App. 3d 988, 991, 995-96 (1997), this court found that the defendant did not knowingly and understandingly waive her right to a jury trial even though she signed a written jury waiver that had been translated by a Chinese interpreter and the trial court informed her, without elaboration, that she could be tried by either a judge or a jury.  
Phuong
, noted that the trial court did not inform the defendant that a jury trial meant that members of the community would serve as fact finders, and that nothing indicated the defendant had any prior experience with the American judicial system to warrant an understanding of a jury trial.  
Phuong
, 287 Ill. App. 3d at 996.  Here, in contrast, the trial court explained to defendant what was meant by a jury trial, and defendant’s previous conviction demonstrated prior experience with the American judicial system.  Therefore, 
Phuong
 is not persuasive.

Finally, defendant contends that the trial court’s inquiry as to his understanding of the nature and function of a jury and the ramifications of giving up the right to a jury trial was as perfunctory as the inquiry in 
People v. Sebag
, 110 Ill. App. 3d 821, 828-29 (1982).  
Sebag
 recognized that “it is the duty of the trial court to see that a waiver of right to jury trial is expressly and understandingly made, and such obligation is not to be perfunctorily discharged.”  
Sebag
, 110 Ill. App. 3d at 828.  The trial court in 
Sebag
 addressed the defendant, who was without benefit of counsel and was not familiar with criminal proceedings, as follows:

“THE COURT: You are entitled to have your case tried before a jury or a judge.

DEFENDANT SEBAG: Judge.

THE COURT: Jury waiver.  Do you understand that by waiving a jury at this time that you cannot reinstate it; do you understand that?

DEFENDANT SEBAG: Yes.”  
Sebag
, 110 Ill. App. 3d at 829.

The appellate court concluded that this discussion did not advise defendant of the meaning of a trial by jury and further noted that defendant was without counsel and unfamiliar with criminal proceedings.  
Sebag
, 110 Ill. App. 3d at 829.  

In the instant case, defendant was represented by counsel, was familiar with criminal proceedings, was advised by the trial court of the meaning of a trial by jury, and was asked by the trial court whether he understood the meaning of a jury trial.  The trial court further asked the defendant if he understood that he was giving up his right to a jury trial and whether that was what he wanted to do.  Given these circumstances, the trial court’s inquiry in the instant case cannot be characterized as perfunctory, and 
Sebag
 is clearly distinguishable.

B. Right to Confront Accusers and Be Present at Trial

Defendant argues that his petition stated the gist of a meritorious claim in that because he did not understand the English language sufficiently and no interpreter was provided, he was deprived of his right to confront his accusers and be present at every stage of the trial.  Defendant, however, did not allege in his post-conviction petition or supporting memorandum that failure to provide an interpreter deprived him of his right to confront his accusers and be present at every stage of the trial.  Accordingly, that argument is waived and we will not address it in this appeal.  725 ILCS 5/122-3 (West 1998) (“Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived”); 
People v. Moore
, 189 Ill. 2d 521, 544 (2000) (refusing to consider and expressing no opinion as to the merits of a claim defendant first raised on appeal from the dismissal of his post-conviction petition). 

However, defendant did allege in his post-conviction petition that an interpreter was necessary because he did not understand the English language.  That allegation was raised by defendant in the context of defendant’s claim that he did not voluntarily and intelligently waive his constitutional rights to a trial by jury because no interpreter was provided.  We note we have addressed that allegation, and for the reasons previously discussed, we find the record positively rebuts that claim.

C.  Ineffective Assistance of Counsel

On appeal defendant contends that his jury waiver was involuntary and unintelligent because he received ineffective assistance of counsel.  However, neither defendant’s post-conviction petition nor his direct appeal raised this claim.  Defendant now contends  that his petition stated the gist of a meritorious claim that trial counsel was ineffective for instructing defendant to say “yes” to the trial court’s questions regarding whether he wished to waive his right to a jury, even though defendant “in fact desired a jury trial.”  In his petition defendant claimed he was denied his right to a jury trial because his waiver was not made knowingly and intelligently, but he did not claim that his counsel rendered ineffective assistance in allowing him to waive his right to a jury trial.  Therefore, this claim is waived because defendant did not raise it in his petition for post-conviction relief.  725 ILCS 5/122-3 (West 1998); 
Moore
, 189 Ill. 2d at 544.  We note we have previously addressed defendant’s claims regarding whether defendant’s jury waiver was made voluntarily and intelligently and have found the record positively rebuts those claims.

Defendant’s final contention is that his petition stated the gist of a meritorious claim that trial counsel was ineffective for not discrediting the confidential informant who testified for the State by showing his interest, bias, and motive to testify falsely.  Defendant alleged that the confidential informant was biased because he was “presumed to be [codefendant’s] long lost disliked brother who is attempting to set up [codefendant] as well as [defendant],” and that the confidential informant had a motive to testify falsely, “
i.e.
, the dislike and hatred” of codefendant and defendant.  Defendant also claimed that it was “obvious that a deal was met between the [confidential informant] and State[;] however, exactly what that deal was remains unknown to date.  Assuming 
arguendo
 that no deal was met between the State and [the confidential informant], defense counsel still should have laid a foundation to examine [the confidential informant].”  Defendant notes that when the confidential informant’s name was eventually revealed to counsel at trial, defense counsel stated that he would explore available information under that name.  Defendant contends that counsel was ineffective because he did not conduct this investigation diligently and the lack of diligence resulted in a failure to discredit the confidential informant.

The State asserts that this claim of ineffective assistance is waived because defendant could have raised it on direct appeal.  Defendant counters that trial counsel’s failure to investigate the confidential informant’s background was beyond the scope of the record on direct appeal and that, if the issue could have been raised on direct appeal, then appellate counsel was ineffective for failing to raise the issue of trial counsel’s ineffectiveness.  We address the defendant’s claim of ineffective assistance because the waiver rule may be relaxed where the defendant’s arguments relate to the alleged incompetency of the original appellate counsel.  
People v. Hayes
, 279 Ill. App. 3d 575, 580 (1996).

Ineffective assistance of counsel is established when it is proven that counsel’s representation fell below an objective standard of reasonableness and that, but for counsel’s shortcomings, the outcome of the proceeding would have been different.  
Strickland v. Washington
, 466 U.S. 668, 687, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068 (1984).  If the ineffectiveness claim can be disposed of because the defendant did not suffer sufficient prejudice, a court need not consider whether counsel’s performance was deficient.  
Strickland
, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.
  The defendant must overcome a strong presumption that his counsel’s conduct falls within the wide range of reasonable professional assistance and that the challenged conduct constitutes sound trial strategy.  
People v. Giles
, 209 Ill. App. 3d 265, 269 (1991).  To overcome these presumptions, defendant must demonstrate the outcome of the proceeding would have been different had it not been for counsel’s ineffective representation.  
Giles
, 209 Ill. App. 3d at 269.

In order to show ineffectiveness of appellate counsel, a defendant must establish both a deficiency in counsel’s performance and prejudice resulting from that deficiency.  
People v. Edwards
, 195 Ill. 2d 142, 163 (2001).  However, there is no requirement that appellate counsel raise every conceivable issue on appeal, and appellate counsel is not ineffective for failing to raise issues that are without merit.  
Edwards
, 195 Ill. 2d at 163-64.

The record reveals that on direct examination, the confidential informant testified that in 1989, he had been convicted of burglary in Cook County, and that in 1992, in federal court, he had been convicted of conspiracy to distribute cocaine.  The confidential informant also testified on direct examination that he had been working as an informant for the DEA for six or seven years.  On cross-examination, defense counsel followed up on this testimony by probing the confidential informant’s criminal history and relationship with the DEA.  Specifically, defense counsel elicited testimony from the confidential informant that he worked for the DEA while he was on federal probation; that he signed an agreement with the DEA that he would not use drugs, subsequently tested positive for drug use while on probation, yet continued to work for the DEA and did not have his probation revoked; that since 1992, the DEA had paid him about $330,000 in cash for his work in various cases; and that the DEA paid him about $2,200 for his work in this case.

The record also indicates that before the confidential informant’s name was revealed to him, defense counsel objected to the withholding of the name several times and then informed the trial court that he had a standing objection to the continued withholding of the name.  While discussing his standing objection, defense counsel mentioned that he had a copy of the confidential informant’s criminal history or “B. of I. sheet” with his name and other identifying information redacted.  Defense counsel indicated, “The confidential informant could be [codefendant’s] long lost disliked brother who is attempting to set up [codefendant] as well as my client.  There are things that need to be explored, your Honor and certainly one would normally want to start that expl[or]ation at the first logical step which is the name of the individual.”  Later, when the trial court decided to reveal the name of the confidential informant, both the trial court and defense counsel indicated that revealing the name was unlikely to change the outcome of the trial:

“THE COURT: Counsel, couple of things.  Number one, I want to correct or change a ruling I made last week with respect to the name of [the confidential] informant.

[ASSISTANT STATE’S ATTORNEY]: In what sense?

THE COURT: In the sense the name can be revealed for whatever it’s worth at this point.  I don’t know if you want to call him back.  I don’t know.  That will be changed.

[DEFENSE COUNSEL]: And after the State provides me that I may want to take a very brief recess of course to see if there is any other information I can find basically under that name.

THE COURT: Right.

[DEFENSE COUNSEL]: I don’t believe it’s going to significantly impact the conclusion of the case.

THE COURT: And frankly it won’t impact the case that his name is revealed, just my personal opinion.  After I’ve done a summary search on it and reviewed the transcript, I was in error, that name should have been revealed.”

After the recess, defense counsel did not ask to recall the confidential informant.

Given these circumstances, we cannot find that the petition stated the gist of a meritorious constitutional claim.  First, defendant has not overcome the strong presumption that defense counsel’s approach regarding the confidential informant was the product of reasonable trial strategy.  See 
Strickland
, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.  Without the benefit of knowing the confidential informant’s name, defense counsel cross-examined him, questioned him about his criminal history, elicited testimony that he had been paid large sums of money for the information he provided to the DEA, and revealed that he had violated his agreement with the DEA not to use drugs while working as an informant and while on probation.  Once the name was revealed, defense counsel requested a short recess “to see if there is any other information I can find basically under that name.”  After returning from the recess specifically taken so defense counsel could further investigate the informant, defense counsel did not recall the informant for any further examination.  Based on this record, it is reasonable to conclude that such decision was the result of sound trial strategy.

Moreover, defendant has not shown that the result of his trial would have been different had defense counsel further investigated or cross-examined the informant.  Even before his name was revealed, both the trial court and defense counsel stated their belief that revealing the name would not impact the case.  While defense counsel had suggested at one point that the informant may have been the long-lost, disliked brother of the codefendant, once the confidential informant’s name was revealed, defense counsel did not mention this possibility again.  We conclude defense counsel chose not to pursue that theory as a matter of sound trial strategy.  Defendant alleges that it was “obvious that a deal was met between the [confidential informant] and State[;] however, exactly what that deal was remains unknown to date.  Assuming 
arguendo
 that no deal was met between the State and [the confidential informant], defense counsel still should have laid a foundation to examine [the confidential informant].”  Beyond pure speculation, defendant has not indicated how further investigation or additional foundation would have changed the outcome of his trial.  Moreover, the record reflects that defense counsel competently explored the confidential informant’s credibility during cross-examination.

Based on this record, we conclude that defendant’s claim that his trial counsel was ineffective failed to allege sufficient facts from which the trial court could find a valid claim of deprivation of a constitutional right.  We therefore find defendant suffered no prejudice from appellate counsel’s failure to raise the issue of trial counsel’s incompetence on direct appeal.  
The record positively rebuts defendant’s claims that his trial counsel was ineffective for failing to thoroughly investigate and discredit the confidential informant and that appellate counsel was ineffective for failing to raise the issue of trial counsel’s incompetence on direct appeal.  Therefore, defendant failed to state the gist of a meritorious claim regarding ineffective assistance of counsel.

III. CONCLUSION

We find defendant failed to state the gist of a meritorious claim regarding his allegations that he did not voluntarily and intelligently waive his right to a jury trial.  Defendant’s allegations that he did not understand the English language and that no interpreter was provided are positively rebutted by the record.
  Defendant also failed to state the gist of a meritorious claim regarding his allegations of a deficiency in counsels’ performance or prejudice resulting from that alleged deficiency.  Defendant’s allegations of ineffective assistance of trial counsel and appellate counsel are positively rebutted by the record.
  Regarding the issues of jury waiver and ineffective assistance of counsel defendant failed to allege sufficient facts from which the trial court could find a valid claim of deprivation of a constitutional right. 

After reviewing the record and considering the law applicable to the instant case, for the reasons previously discussed, we find the trial court properly summarily dismissed defendant’s post-conviction petition without an evidentiary hearing.

The judgment of the trial court is affirmed. 

Affirmed.

McNULTY, P.J., and COHEN, J., concur.